Argued at Pendleton May 8, affirmed October 9, 1928.

# MINERVA KNIGHT *v.* CITY OF LA GRANDE.

(271 Pac. 41.)

For appellant there was a brief over the name of *Mr. Colon R. Eberhard,* with an oral argument by *Mr. George T. Cochran.*

For respondent there was a brief over the name of *Messrs. Green & Hess,* with oral arguments by *Mr. R. J. Kitchen* and *Mr. R. J. Green.*

ROSSMAN, J.—The appellant presents to us only three assignments of error. One is to the effect that the court erred when it overruled the general demurrer to the complaint; in the other two, the defendant contends that the court erred when it denied the city's motions for a nonsuit and directed verdict. The first assignment of error presents no technical question of pleading; we shall therefore dispose of the appeal by considering the assignment of error which is based upon the denial of the motion for a directed verdict. The trial developed substantial evidence to the following effect: In the City of La Grande there is a public street known as North Ash Street. In October or November of 1925 the city constructed a cement sidewalk along the portion of this street with which we are concerned. This permanent walk succeeded a wooden walk which had apparently been in place for some years. Prior to the plaintiff's injuries the city upon at least two different occasions had improved the roadbed of North Ash Street by the use of an implement called a blader; we understand that this instrumentality removes the soil from the edge of the roadbed and forces it toward the center, thus producing a crude type of a ditch or curbstone line at the edges of the roadway, and at the same time turnpiking the roadbed by making the central area higher than the edges. The

blading work had been done a year or two prior to the time when the cement walk was installed; when the blading work was done the city endeavored to improve only that portion of the street area eighteen feet from the property line, thus leaving the latter area for the sidewalk and parking. While the blader did not produce a fine smooth surface, nevertheless this work like that spent in the construction of the walks was performed by the city. Thus prior to December of 1925 the city had endeavored to improve the roadbed, and had constructed at one time wooden sidewalks, and later, cement sidewalks. North Ash Street was used not only by those whose residences faced it, but also by the general public. One witness described the quantity of traffic upon the street by saying, "there was a car going by every few minutes"; while another said, "there was quite a lot of traffic on it." By December of 1925 the ditch or crude curbstone line made by the blader had been entirely obliterated, and in front of No. 2603 N. Ash Street, which is the place with which we are concerned, the automobiles ran very close to the outer edge of the sidewalk. The evidence indicates that the full width of the street from sidewalk line to sidewalk line had been commonly used over a long period of time; especially in the winter months. This was due not to the volume of traffic, but to the search for a drier and better roadbed. When the city proceeded to construct its cement sidewalk it apparently desired that the walk should take a uniformly level course; to effect this purpose it was necessary to make some minor excavations and some similar fills in the vicinity of the place where the plaintiff was later injured. Thus in front of No. 2603 the cement walk was placed at a level below that of the adjacent

ground; some of the plaintiff's witnesses testified it was two feet lower than the ground, while the defendant's witnesses fixed the depth at not less than four and one-half inches. The excavation was one foot wider than the five-foot cement walk; the sides of the excavated area were perpendicular; thus the walk lay in a trench. On December 27, 1925, at about 4 P. M. the plaintiff, a woman 78 years of age, alighted from an automobile immediately in front of No. 2603; the car stopped about two or three feet from the cement sidewalk and the plaintiff got out backward. Before she alighted a Mr. and Mrs. Anderson had already stepped to the ground from the same car; the former stood to the plaintiff's right, while Mrs. Anderson was to her left. As the plaintiff was about to turn and take a step in so doing, so as to get out of the way of a car which was proceeding to go into operation, she fell into the aforementioned excavation and sustained the injures of which she makes complaint. The car was an open model, whose curtains containing transparencies were in place. Prior to December 27th the plaintiff had heard talk about the plan of the city to install cement sidewalks along North Ash Street, but did not know that they had been actually constructed; nor did she see the trench or cement sidewalks prior to her injuries. No barrier had been placed by the city to prevent one from falling into the trench, and no warning notices were in place. The driver of the car testified that he had not noticed the embankment prior to stopping his car, but that as he was driving away he noticed the excavation, and testified that he could see it plainly through the curtains of his car. The plaintiff was seated upon the left-hand side of the car with Mrs. Anderson to her right; there

were two occupants in the front seat. The evidence does not disclose whether Mr. and Mrs. Anderson saw the trench before the accident occurred, nor whether the plaintiff could have seen it from her position. The plaintiff described the events which immediately preceded the accident as follows: "I did not have time to look; I was hurrying to get out and just as I started to turn I stepped off; I didn't have time to look." She testified that she had got only halfway turned around, "and the first step I took I stepped off the high bank and I went down * * yes, before I got turned around." In front of No. 2603 and beyond the sidewalk line there was no grassy area of the kind commonly called parking. There was nothing to indicate to anyone that any portion of the street had been withdrawn from public use; in fact we believe that the evidence warrants a finding that the ordinary traveler would have assumed from appearances that the entire street area was there for his accommodation. The course followed by the driver as he drove in front of No. 2603 was the usual course of automobiles, as was well defined by numerous tire marks; cars favored this course, at that time, because the ground was firmer due to deposits of gravel. The plaintiff had been in front of No. 2603 upon other occasions, but never since the cement walk had been installed. The wooden walk with which she was familiar was only two or three inches below the surface of the ground. At the intersection of North Ash Street and "Y" Street, a distance of approximately 150 feet from No. 2603, the sidewalk was extended out to the proposed curbstone line. The city contends that this was the proper place for pedestrians to enter upon the sidewalk. Some witnesses testified that in some cities it is the

practice not to remove the surplus earth, but to permit the sidewalk to remain in the trench.

■ The problems now present themselves: was the city negligent in permitting the street to remain in the above condition, and was the plaintiff guilty of contributory negligence? The defendant argues that it is permissible for a municipality to apportion various parts of the street area to sidewalk and gutter space, to park area and so on, and that its act in doing so is the exercise of a governmental prerogative which is beyond judicial review, unless some distinct legal right has been imposed upon and violated. This principle of municipal law, which recently received recognition by this court in *Butler* v. *City of McMinnville* (Or.), 268 Pac. 760, is not controverted by the plaintiff. The plaintiff contends that the whole width of the street, as a matter of fact, had been placed by the city at the disposal of the traveling public. This contention is supported by evidence; thus there is much evidence to the effect that the entire area between sidewalk lines was commonly employed by the traffic; in fact the defendant's street superintendent testified that when the street was bladed he found vehicle tracks covering the entire width of the street between sidewalk lines. We therefore conclude that the spot where the plaintiff alighted from the automobile and was injured had not been set aside by the city as a parking area in December of 1925, nor withdrawn from traffic use, but that upon the other hand there was evidence to justify the jury in finding that the city intended that this spot should be used for traffic purposes.

■ ■ Further, the plaintiff does not predicate her demands upon any defect in the defendant's plan of improvement. The authorities recognize that al-

though an injured party cannot impute negligence to a city due to. some defect in its plan for consummating an improvement, he may charge negligence against a city if it owed a duty in the exercise of a ministerial function to guard an excavation, or a declivity. See, for instance, *City of Wyandotte* v. *Gibson,* 25 Kan. 236, and footnote to *Elam* v. *Sterling,* 20 L. R. A. (N. S.) 512, 535. Particularly the plaintiff contends that when the city dug the sidewalk trench immediately adjacent to this spot, the situation which it created was a dangerous one and that due care for the safety of the traveler demanded that the city should close to traffic that particular area, or place in position a warning sign or a barrier. In determining the problem thus presented, we should bear in mind that occupants of vehicles frequently alight in front of the various premises along a street, similar to the act of the plaintiff; others cross the street at places other than the intersection. Such and other uses of the street give the individual frequent occasion to enter upon the sidewalk from the part of the street that is commonly employed by the vehicles. The trench in front of No. 2603 lay directly across the course of one engaged upon such an errand. In our case the course of automobile traffic came within two or three feet of this trench. Favorable conditions, or the exercise of a degree of care commensurate with the presence of such a dangerous condition, would enable many to cross the street in safety; but darkness, a windy, rainy day, or some other unfavorable circumstance, might cause an unwary individual to meet the fate that awaited this plaintiff. In the absence of some legislative enactment, or charter provision, the city owes a duty to exercise reasonable care in maintaining the

streets in a condition reasonably safe for public travel: McQuillin, Mun. Corp. 2760. The city's duty is stated in the case of *Herndon* v. *Salt Lake City,* 34 Utah, 65 (95 Pac. 646, 131 Am. St. Rep. 827):

"If the city opens and undertakes to put the whole width of the street in condition for travel and invites the public to use the whole width, then it is the duty of the city to exercise ordinary care so as to maintain the whole width of such a street in a condition reasonably safe. * *

"The general doctrine that may be deduced from the cases that have considered and passed upon facts such as those in the case at bar may be stated as follows: That in opening a street for travel, whatever may be its nominal or platted width, it is primarily a matter within the discretion of the city to say whether it will prepare the whole or only a portion of the width of the street for travel; * * That where the whole width of the street has been prepared and opened for travel, whether primarily necessary or not, the city must thereafter maintain the whole street in a reasonably safe condition throughout its entire width * * and as to whether the streets are maintained in a reasonably safe condition for travel (whether throughout their entire width where the whole width is opened, or over that portion which is opened and prepared for travel), is always a question of fact to be determined by the jury from all the facts and circumstances in the particular case * * As a general rule the city is not required to put up barriers to prevent travelers from driving off the traveled portions of the streets. Barriers are not required for this purpose. They are generally required only where an obstruction or excavation is placed or made in the traveled part of the street, or where the excavation or dangerous declivity is so near the traveled part of the street that it makes it a dangerous place to pass over. In other words, barriers are intended to make the passageway safe, and not to mark or define its limits

so as to warn travelers not to drive outside of them. * * In this regard it may be said that, where a city maintains a street upon two levels, one considerably higher than the other, and the two are divided by an abrupt declivity, and both levels are opened for travel, then it may be incumbent upon the city to place a barrier along the upper level to prevent accidents in driving over the edge. * * As to whether it is reasonably safe in view of all the surrounding circumstances is always a question of fact. * * "

These, we believe, are the general principles of law that are applicable to the controversy before us. Their statement is easier than their application. Counsel for both sides, especially for the defendant, have cited a large number of cases wherein these principles are reduced to print and applied to a variety of facts. From a careful perusal of these cases we have derived help in applying the foregoing principles to the facts before us. In one of the cases cited by counsel a pedestrian tripped over a wire that protected the parking area that lay between the sidewalk and the street; in another the traveler collided with a post that had been erected to protect a tree in the parking area; in still another the plaintiff was injured when she fell into an open drain near the edge of a driveway. Others of the cases cited recognize a distinction in the care owed to the traveler over a country road as distinguished from the care owed to the traveler who is engaged in the use of a downtown city street. In fact a difference is recognized in the hazards presented by the various parts of the sidewalk. Thus, for instance, in *City of Atlanta* v. *Milam*, 95 Ga. 135 (22 S. E. 43), Judge LUMPKIN pointed out that in most American cities water-plugs, telegraph and telephone poles, trees and

other objects are frequently placed upon the margins of the sidewalk, or in the parking area, and that, therefore, the pedestrian is not expected to use such portions of the sidewalk, or street area, with the same degree of freedom as those portions which are not commonly occupied by such stationary objects; nevertheless the Georgia court pointed out, that the city owes a duty to maintain all portions of the street intended for travel in a reasonably safe condition. While the facts differ in all of the cases submitted to us by counsel, they nevertheless apply the same general principle; that is, that when the city invites the traveler to use the entire width of a street area it must exercise due care to present him with a street reasonably safe for the purposes of travel, and that what constitutes reasonable safety is dependent upon all of the surrounding circumstances. We have taken note of the fact that in many of the cases submitted for our consideration the plaintiff was injured by an unguarded excavation, or declivity. Indeed, these cases are so numerous that many of the text-writers give them treatment under a separate headnote. Nor does it require a study of the cases for one to understand that such a condition can readily cause a pedestrian to fall, and thereby sustain an injury. When we bear in mind that this street accommodated a fair amount of traffic which employed the entire width of the street, we believe that the construction of a trench six feet in width and a foot or two in depth directly in the path of one who was leaving the part used by the vehicles to cross over to an adjacent home warranted a conclusion that the city failed to exercise due care. This conclusion, we believe, is in conformity with the principles of law which we have previously set forth.

No case has come to our attention where a court passed upon a set of facts exactly similar to those before us; but, the case of *Townley* v. *City of Huntington*, 68 W. Va. 574 (70 S. E. 368, 34 L. R. A. (N. S.) 118), wherein a recovery by a plaintiff was sustained, will be found somewhat in point. If we conclude that the spot where the plaintiff was injured was in the parking strip, that alone would not defeat her recovery. The city is required to take cognizance of the fact that pedestrians sometimes have occasion to walk over this area, and it must exercise due care to have this area in a reasonably safe condition: *Village of Barnesville* v. *Ward*, 85 Ohio St. 1 (96 N. E. 937, Ann. Cas. 1912D, 1234, 40 L. R. A. (N. S.) 94); although in this area the pedestrian should expect to find such fixed objects as fire hydrants and telephone poles, and must be content with a grassy surface instead of a smooth walk. These principles received recognition in our recent decision of *Butler* v. *City of McMinnville, supra.* See, also, McQuillin, Mun. Corp., § 2746. We conclude that the evidence disclosed a set of circumstances which made it proper for the court to submit to the jury the question of whether the city should have closed this area to traffic, should have erected a railing or placed in position a warning notice.

■ We shall now pass on to a consideration of the question of whether the plaintiff was guilty of contributory negligence. She was not attempting to cross the street; her act was one of alighting from a car to enter a lot adjacent to the street. We do not believe that it can be seriously contended that the extensions from the sidewalk to the curb line, at the intersection, limited her right to enter upon the sidewalk at only that particular place. Those exten-

sions are for the convenience of the pedestrian who is walking from block to block in the same general direction. Dealers in fuel and groceries, piano movers and others engaged in the delivery of various objects, would find it most inconvenient if they were required to unload at the intersection and then carry the merchandise to the specific address. Hence, we conclude that the plaintiff exercised a privilege properly hers when she alighted at the place in question. In *Butler* v. *McMinnville, supra,* the plaintiff undertook to cross the street; her contemplated course carried her over the parking area. Before she had progressed very far her foot was projected into a meter-box in the park strip. The city claimed that the plaintiff was guilty of contributory negligence. Mr. Justice BELT, in announcing the decision of the court, wrote:

" * * ordinarily the question of contributory negligence is for the jury. It is only when but one reasonable conclusion can be reached from a given state of facts that a court will determine the question. We measure the conduct of this woman, who was about 70 years of age at the time she was injured, by what an ordinarily prudent person would have done under similar circumstances. There was no statute or ordinance forbidding pedestrians to cross parking strips. She was not a trespasser, but was at a place where she had a strict legal right to be. It is true that a park strip was not designated for the use of pedestrians, but can it be said, as a matter of law, that it would be unreasonable on the part of the city to anticipate that pedestrians would occasionally cross it * * Of course a higher degree of care must be exercised in walking over a strip on which there are usually obstructions. It will not do to travel in the same manner as if one were on smooth pavement or concrete walk. Care commensurate with the danger involved is a fundamental

rule. * * Summarizing, we cannot say that it is negligence *per se* for the plaintiff to have crossed this strip at a point other than where the usual or designated passageways were provided."

 Before we could say that the plaintiff was guilty of negligence, we must find that some specific act which she performed, or failed to do, did not meet the standard exacted by law; thus we must be prepared to say that the evidence discloses that had she exercised due care she would have discovered the trench before she alighted, or upon reaching the ground and before moving her foot. But, she was seated in the rear seat on the left side of a small touring car; in the front seat was the driver and Mr. Anderson; to her right was Mrs. Anderson; the curtains were in place. The plaintiff was 78 years of age, had performed much hard work in her lifetime, and had ridden in automobiles upon only a few other occasions. We cannot say from this evidence that the exercise of due care upon her part would have disclosed the trench. Getting out of the car backward, we are quite certain, is a common means of exit. As she descended she very likely derived some assurance from the fact that both Mr. and Mrs. Anderson had already alighted and were standing safely upon the ground. Their presence alongside of the car was an indication that there was a safe place for her to step upon. When she reached the ground the car was in front of her, to her right was an open door and Mr. Anderson, to her left was another open door and Mrs. Anderson. We are not prepared to hold that when she stood in this position the exercise of due care upon her part would have revealed the trench. Apparently at this time the driver desired to get his car into motion;

the doors were closed, and the plaintiff proceeded to turn around. Her first step precipitated her into the trench. The closing of the doors of an automobile, and the roar of the engine, not infrequently hastens the movement of those alongside; in fact it may cause their first step to be taken involuntarily. These facts do not carry with them any imputation of negligence. But the evidence also informs us that she had been upon this street before, was familiar with the conditions as they existed when the wooden sidewalk was in place, but did not know that the cement walk had taken the latter's place. The experiences of her prior visits may have caused her to believe that she could take one step without endangering herself. In the vehicle area of the street where she alighted she should not expect an absence of rough spots and other minor projections; but she was entitled to presume, in the absence of notice to the contrary, and act upon the presumption, that the street was in a reasonably safe condition: *Lerner* v. *Philadelphia,* 221 Pa. 294 (70 Atl. 755, 21 L. R. A. (N. S.) 614, and annotations at p. 621). Then, too, a temporary diversion of the attention from the surface of the sidewalk, or of the street, may sometimes be excused. For a late case, see *Smith* v. *Clayton Const. Co.,* 189 Wis. 91 (206 N. W. 67). The starting of the car, the closing of the doors, the novelty of the experience, may have diverted the plaintiff's attention momentarily from the condition of the street. The law exacted of the plaintiff such care as a person of ordinary care, prudence, caution and judgment would have exercised under the circumstances of this case. We believe that men of ordinary intelligence might reasonably differ as to the hazards of the act she performed, and that

therefore the court did not err in submitting the question of contributory negligence to the jury.

All other matters argued in the briefs we have examined carefully. Finding no error, it follows that the judgment of the Circuit Court is affirmed.

AFFIRMED.

RAND, C. J., and COSHOW and BEAN, JJ., concur.