Argued December 5, 1929; affirmed February 11, 1930

BOWERMAN *v.* COLUMBIA GORGE MOTOR COACH SYSTEM, Inc., et al.

(284 P. 579)

*B. A. Green* of Portland (A. E. Wheelock of Portland on the brief) for appellant Bowerman.

*Chester A. Sheppard* of Portland (Sheppard, Phillips & Ralston, Burnett Bros. & Snyder, and R. B. Nason, all of Portland, on the brief) for appellants Mooney.

*Thomas E. Davis* of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief) for respondent.

BELT, J. This is an action to recover damages for personal injuries resulting from a collision occurring on February 10, 1928, about 4:30 in the afternoon, between an auto stage and a school bus. The plaintiff, a young woman 19 years of age, was a passenger on an automobile stage owned and operated by the defendant Columbia Gorge Motor Coach System, Inc., a corporation. The stage was traveling in an easterly direction on the Columbia River highway. The bus, owned by defendant M. G. Mooney, was used in transporting school children from Hood River to their homes. When the bus reached the end of its route at a small station called Sonny, near to and west of Mitchell Point, it was driven off the pavement on the north side on a graveled parking space in front of a gasoline station in order to turn around and go back towards Hood River. Before starting to turn, the bus ran parallel to the pavement for about 40 feet. The driver of the bus, A. D. Tomlinson, thus testified as to how the accident occurred: ''When I started to turn back onto the pavement I swung out the window and looked back to see nobody was coming from behind, and come right around on the pavement, and I got here, near the center, and, why, the bus was in the way and I could not go any farther.''

"Q. Had you looked west before you started across the pavement?

"A. I did.

"Q. At what point did you look west?

"A. Just before I started to turn.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did you see anyone there?

"A. I saw nothing at all.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did the bus sound any horn that you heard after you started across the pavement?

"A. Yes, sir. Just before the crash, the instant the crash occurred.

\*　　　\*　　　\*　　　\*　　　\*

"Q. Did you stop before entering the highway?

"A. I didn't.

"Q. Did you slow up?

"A. I slowed up a little; I just naturally let the engine run along when I run off the highway here, why, just let it run along; it didn't slow up to amount to anything.

"Q. In what gear was your car?

"A. I think I was in high.

\*　　　\*　　　\*　　　\*　　　\*

"Q. How far could you see from where you were just before you started across the highway?

"A. I could see up to the turn, I should judge about two hundred feet."

Nielands, the driver of the stage, gave the following version of the accident:

"Q. Now, as you came around this point, or this curve to the west of the place where the accident happened and observed the school bus leaving the pavement, tell us what your next observations were.

"A. Why, my next observations of him were that he was pulling out there to stop and stay there until I went by.

\*　　　\*　　　\*　　　\*　　　\*

"Q. What did he do?

"A. He pulled out there and stopped.

"Q. And when he came to a stop, about how far west of the school bus was his stage?

"A. When he stopped I must have been fifty feet away from him.

"Q. And did you observe him after that?

"A. Yes; I watched him.

"Q. And when you came up to pass, had you observed any change in his position?

"A. None whatever.

"Q. Did you know that he had started until the collision took place?

"A. Well, yes.

"Q. How did you know that?

"A. Why, in passing him I seen just, you might say, something coming toward me and it was too late; I could not do a thing."

The school bus struck the stage in the center almost at a right angle. As a result of the collision, a piece of glass from one of the stage windows struck plaintiff in the eye, injuring it to such an extent that it was later necessary to remove it.

Plaintiff's theory of the case as expressed in her complaint is that the defendants are joint tort-feasors and that their combined and concurrent acts of negligence caused the injuries of which she complains. A demurrer of the defendant School District to the complaint was sustained by the trial court, whereupon the other defendants answered separately, each alleging the negligence of the other as the cause of the collision.

Verdict and judgment were had in favor of plaintiff and against the defendants M. G. Mooney and E. C. Mooney in the sum of $25,000.

■ Plaintiff, not being satisfied with a judgment against only the defendants above named, appeals, assigning as error the failure to give an instruction relative to measure of damages. The amount of the verdict does not indicate that the plaintiff has any

cause to complain in that respect. Her counsel frankly stated, in substance, on oral argument, that if the judgment could be satisfied the plaintiff would not be here on appeal. At any rate the court fully and properly instructed the jury as to the measure of damages.

Defendants Mooney appealed, asserting that the court erred in sustaining the demurrer of the defendant School District to the complaint. It was alleged in the complaint that School District No. 2 had entered into a contract with E. C. Mooney whereby he agreed to transport and carry school children from a station on the Columbia River highway known as Sonny to all points east as far as Hood River. Under the terms of this contract the School District "reserved the right to participate in the selection and control of the driver of said truck and in the operation of said truck * * *." It is further alleged that the School District did employ a driver who was operating the truck at the time of collision and that "E. C. Mooney and M. G. Mooney and School District No. 2 retained joint and several control over the method and manner and conditions of the operation and use of said truck, and said truck at the time of said collision * * * was being operated under and by virtue of the joint and several control of said E. C. Mooney, M. G. Mooney and School District No. 2."

■ The admission of the defendants Mooney that they were the owners of the school bus and in control of its operation was sufficient to constitute a prima facie case of liability for damages sustained through the negligence of their servant, the driver of the bus. *Foster v. Farra et al.*, 117 Or. 286 (243 P. 778), and numerous authorities therein cited. These defendants clearly were not entitled to a directed verdict in their favor.

■ Error is assigned on the admission in evidence of a photograph offered by the defendant Columbia Gorge Motor Coach System, because it did not purport to show the scene of the accident but was a picture of the highway at a place about 100 feet distant from where the accident occurred. It was proper to receive this photograph in evidence as it showed the place where the school bus first left the pavement to go upon the graveled parking space. *Wyldes v. Patterson,* 31 N. D. 282 (153 N. W. 630), cited by appellants, is not in point. In that case the accident occurred in November, 1910, and the photograph of the scene excluded by the court was taken in June, 1913, after there had been a substantial change in the condition of the building in which the plaintiff was injured. At the time of the accident the building was in process of construction, but when the photograph was taken it was completed.

■ The trial court was right in sustaining the defendant School District's demurrer to the complaint. It appeared from the face thereof that the relation of master and servant existed between the defendants Mooney and A. D. Tomlinson, the driver of the school bus. The Mooneys were independent contractors. The facts pleaded relative to the contract between the School District and the Mooneys overcome the conclusion of the pleader that the School District was in control of the operation of the school bus. That the complaint was so construed is evidenced by the following stipulation of counsel during the trial, relative to the operation and control of the bus:

"Mr. Green: May it please the court with respect to the allegations of the complaint that M. G. Mooney was the owner of the truck and the two Mooneys were in joint operation of the truck, it has been stipulated with respect to the school bus that the allegations

in the complaint as to the ownership and operation of that by the Mooneys and they being in charge of that, it has been stipulated that the allegation is true; and with respect to the operation of the bus by the driver, it has been stipulated that the driver of the school bus was under the control of the two defendants, the Mooneys. Am I correct in that?

"Mr. Sheppard: Yes, sir."

The liability of the school district for a tort is well considered by Mr. Justice RAND, speaking for the court, in *Antin v. Union High School District,* 130 Or. 461 (280 P. 664). The holding of the court in that case is decisive against the contention of appellants that there could be any liability against the school district on account of the tort as alleged in the instant case. We see no need to restate the law.

■ We see no abuse of discretion in the court's permitting plaintiff to remove her glass eye in the presence of the jury. The rule is thus stated in 14 R. C. L. 715:

"It is within the discretion of the trial court, with due regard to decency, to permit the plaintiff in a personal injury case to exhibit his injuries to the jury in order to show their extent or to enable the surgeon to demonstrate their nature and character."

In *Orscheln v. Scott,* 90 Mo. App. 352, plaintiff, over objection of defendant, was permitted to exhibit the empty eye socket to the jury. It was urged there, as here, that such exhibition could serve no purpose other than to excite the pity and sympathy of the jury. The court said:

"Undoubtedly such was the tendency. But if plaintiff was entitled to make the showing, such result can only be regarded as an unavoidable consequence. It is a result which follows, in a greater or less degree, the mere entrance of a maimed litigant into the court room.

114

It was a species of real evidence, or, to use Greenleaf's language, of autoptic proference. There was no better way to show the extent of the injury, thereby aiding in the estimate of damages. Such exhibition is generally and rightly treated as a proper process of proof, subject to occasional exclusion in cases of abuse."

Also see *Seltzer v. Saxton,* 71 Ill. App. 229.

■ There was no error in the court's refusal to give the following requested instruction:

"I further instruct you that if you find from the evidence in this case that the operator of the school bus looked to the right before crossing the said high-way at or near the point of collision, and that at said time he had a view of 200 feet, more or less, to his right, and that at said time the driver of the common carrier, or stage coach, had an equal view of the school bus, the school bus would be warranted under the law in crossing said highway and in assuming that the operator of the common carrier would obey the law and so manage and control its car as to prevent injury or damage to other persons and property."

The above instruction does not state whether it was necessary for the driver of the school bus to observe what was on the highway before attempting to cross the same, or whether the stage was in view at the time he looked to the right. The law applicable to the right of the driver of the school bus to go onto the highway at the time in question was clearly and concisely stated by the trial court, as follows:

"It was also the duty of the defendant Mooney to look out for and give way to said stage and not to turn to his left upon the pavement, if at the time of turning the stage was in such position that a reasonably prudent person would have apprehended that a collision was likely to occur, if said school bus attempted to cross said pavement."

Furthermore, consider subdivision 7 (c) of section 2 of chapter 217, General Laws of Oregon, 1927, which provides:

"The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway, and shall come to a full stop before entering such public highway."

We see no other assignments of error which merit attention.

The judgment of the lower court is affirmed.

Coshow, C. J., Bean, J., and Hamilton, A. A. J., concur.