Argued March 17; affirmed April 21, 1931

# SEARS *v.* GOLDSMITH ET UX.
## (298 P. 219)

152

*Herbert L. Swett,* of Portland (Dey, Hampson & Nelson, of Portland, on the brief), for appellants.

*Howard P. Arnest,* of Portland, for respondent.

BEAN, C. J. The first assignment of error is that the court erred in failing to direct the jury to return a verdict for defendants. The complaint alleges negligence, in effect, as follows: That at the time and place the defendant, Amy R. Goldsmith, as the operator of defendants' Hupmobile sedan, as the same stood parked at the curb, negligently, recklessly and carelessly started said automobile and caused the same to move backward without first observing if any pedestrian, and plaintiff in particular, might be affected by such movement, and without giving a clearly audible signal by sounding the horn on defendants' car, and without warning the plaintiff of her intention to so move said automobile. The testimony tended to support the allegations of the complaint.

The defendants contend that the submission of the case to the jury cannot be justified unless it is the

law that a person who is about to back an automobile from a parking area must first sound his horn and ascertain for certain that no pedestrian is where the backing car might possibly run against him. The case was submitted to the jury under instructions of the court to the effect that it was the duty of the driver of the car, before starting, to first see that such movement could be made in safety, and if any pedestrian may be affected by such movement he shall give a clearly audible signal by sounding the horn. The defendant has the proposition reversed. The defendant was not required to sound the horn in the first instance or unless some pedestrian might be affected by the movement of the car.

It appears from the evidence that on June 16, 1928, plaintiff, with her husband and daughter, rode in a Buick automobile driven by her husband in an easterly direction on Morrison street in Portland, Oregon, to a point about a car's length from the intersection of Morrison street with Park street. At that point, in order to permit plaintiff and her daughter to alight for the purpose of shopping, the Buick was brought to a stop approximately one-third of its length alongside the Hupmobile sedan of defendants as it then stood headed east and parked at the curb of Morrison street, the balance of the Buick automobile extending along an open space to the rear of the Hupmobile. The plaintiff observed the Hupmobile and noticed that it was stationary and unoccupied. She opened the right door of the Buick and stepped down to the street, closed that door and then closed the rear right door of the Buick through which the daughter had alighted and momentarily spoke to her husband as to whether he would park the car or come for plaintiff. While engaged in

this conversation the Hupmobile, without warning, through the operation of defendant Amy R. Goldsmith, was backed upon the left foot and ankle of plaintiff and she was thereby thrown to the pavement and injured.

Section 55-706, Oregon Code 1930, containing the law applicable thereto, reads in part as follows:

"9. (a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, * * *"

As one of the reasons for the court directing a verdict in favor of defendants, they claim that plaintiff was guilty of contributory negligence in alighting from the Buick automobile in the street. Plaintiff's car was stopped near the intersection of the streets at an appropriate place for alighting from a car in the business section of the city of Portland. She was not crossing the highway. She merely got out of the car where she was required to step but a few feet to the sidewalk. The defendants criticize plaintiff for the reason that "she alighted backwards from the front seat." In *Knight v. La Grande,* 127 Or. 77 (271 P. 41, 61 A. L. R. 256), Mr. Justice Rossman said: "Getting out of the car backward, we are quite certain, is a common means of exit." The testimony of plaintiff is that she stepped down facing the front of the Buick after she looked at the Hupmobile.

The court charged the jury in part as follows, upon which error is predicated, namely, if Amy R. Goldsmith, as the operator of the Hupmobile automobile, caused said automobile to move backward from its position

"that it was the duty of said Amy R. Goldsmith, before starting said Hupmobile, to first see that such movement could be made in safety to traffic, including pedestrians, and her further duty to see if any pedestrians might be affected by such movement; and, that it was the further duty of the defendant Amy R. Goldsmith if any pedestrian might be so affected by such movement to give a clearly audible signal by sounding the horn of said Hupmobile automobile."

It will be noticed from the quoted portion of the charge to the jury that the court did not instruct that it was the absolute duty of defendant to sound the horn of the automobile or to ascertain for certain that no pedestrian was where the backing car might possibly run against him. The instruction conforms to the statute and prescribes the duty of the operator of a car in respect to starting an automobile. The testimony tended to show that Mrs. Goldsmith did not first see that such movement of the car could be made in safety to pedestrians. It appears from her own testimony that she looked to her left and then to her right, and as she started the car she looked in the "rear mirror." The jury was warranted in finding that if she had used reasonable care in observing whether plaintiff was in the rear of her car she would have seen her. The court instructed the jury that it was the duty of defendant, if any pedestrians might be affected by the movement of the car, to give an audible signal by sounding the horn of the Hupmobile automobile. There was no error in denying the motion of defendants for a directed verdict.

■ The defendants assign error of the trial court in failing to give portions of the requested instructions to the effect that if they found that Mrs. Goldsmith was negligent it would still be necessary for them to

determine whether such negligence proximately caused the accident. The court instructed the jury in part as follows:

"It is not necessary, under the Oregon law, for an automobile driver who is starting an automobile to sound his horn by way of signal unless, in the exercise of due care and caution, the driver could or would have seen that a pedestrian or other vehicle might be affected by such movement. The mere fact that a pedestrian was in the line of travel, does not necessarily require the sounding of a horn, unless in the exercise of due care and caution, under the circumstances, the driver of the Hupmobile automobile should have known that a pedestrian was in her path. In this connection, it is proper for you to consider all the circumstances of the case.

"Even if you find that Mrs. Goldsmith did not sound the horn and if you further find that she was negligent in that respect, it would still be for you to determine whether or not such negligence proximately caused the accident."

The instructions given by the court, it will be seen, preclude defendants from contending for the errors claimed to have been committed, and properly charged as to the proximate cause, and gave the jury a fair direction as to the duty of the driver of an automobile in observing whether a pedestrian would be affected by the movement of his automobile and what was required of defendant in sounding the horn of his automobile. The statute prescribes the modicum of care that is required of plaintiff in operating the automobile. Defendants contend that the law requires one who is about to back his car from a parking space to merely exercise the care of an ordinarily prudent person under the same circumstances. The jury had reason to conclude from the testimony that Mrs. Goldsmith did not use ordinary care in seeing if any pedestrian

might be affected by the movement of her car. Mrs. Goldsmith, by glancing in the "rear mirror" at the time she started the car backward, was relying upon a very imperfect inspection at the rear of her car. It depended wholly upon how the mirror was adjusted as to whether it would be of any service.

 Error is predicated upon the court's permitting Dr. F. H. Dammasch, witness for defendant, upon cross-examination, over defendant's objection, to make a physical examination of plaintiff's foot and ankle in the presence of the jury. The doctor stated that he did not remember noticing that there was a swelling in plaintiff's left ankle when he made a prior examination, and counsel for plaintiff asked the doctor if he was able to look at Mrs. Sears' left ankle at that time and state whether there was any evidence of swelling in it or not. He answered, "I would be very glad to." Mrs. Sears was asked to have the doctor look at her left ankle. Counsel for defendant suggested that this be done elsewhere than in the court room. The doctor called for a steel tape and examined Mrs. Sears' bare foot and ankle. Upon being asked "Is there any evidence of the difference in the size of these ankles?" he answered, "Yes, it looks to me as though the left one is larger." The doctor had stated on direct examination, as follows:

"Mrs. Sears presented herself for examination, and I examined at that time the X-ray picture which had been taken some months subsequent to the accident. The examination of the X-ray picture shows that there is no injury to the bony structures whatsoever. At the time of the examination, there was practically no swelling, although there was a limitation of motion; that is, flexion and extension of that left ankle, as compared to the other side."

We see no error in the court permitting the doctor to make a further examination of plaintiff's ankle. There was no possible reason for the jury being prejudiced by such exhibition. It was not an open wound that might excite sympathy or prejudice of the jury against defendant. Where an issue as to personal injuries is involved, an injured person may be permitted to exhibit to the jury the wound or injury, or the member or portion of his body upon which such wound or injury was inflicted. Thus the court has permitted the exhibition of an ankle, a knee or a foot. The matter rests largely in the discretion of the trial court, which will not be interfered with except in case of abuse: 22 C. J. 788, § 898. There was no error or abuse of discretion on the part of the trial court in this respect.

■ The question of whether plaintiff was guilty of contributory negligence was for the jury, which was properly submitted to them under instructions of the trial court: *Casto v. Hansen,* 123 Or. 20 (261 P. 428); *Nisley v. Sawyer Service, Inc.,* 123 Or. 293 (261 P. 890).

Finding no error in the record, the judgment is affirmed.

BROWN, BELT and CAMPBELL, JJ., concur.