Argued March 12, affirmed April 15, 1959

# HENDRICKS *v.* SANFORD

337 P. 2d 974

*Nels Peterson,* of Portland, argued the cause for respondent. With him on the brief were Peterson, Pozzi & Lent, and Philip A. Levin, Portland.

*Clifford E. Nelson,* of Portland, argued the cause

for appellant. With him on the brief were Phelps & Nelson, Portland.

Before McALLISTER, Chief Justice, and WARNER, SLOAN and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by defendant from a judgment of the Circuit Court of Multnomah County for $10,000 based upon a verdict rendered in favor of plaintiff in an action based upon negligence for personal injuries allegedly sustained while plaintiff was a patient in a convalescent home operated by defendant in said county.

The first assignment of error reads as follows: "the court erred in overruling the objection of the defendant to the offer of plaintiff to display the plaintiff's back to the jury (B.E. 1; Tr. 60, 61, 62, 63, 64)." This method of assignment is in direct contravention of Rule 16 of this Court which requires that in this type of situation the objection be set forth in haec verba. We would be thereby justified in refusing to review the assignment. See *Scheufele v. Newman*, 187 Or 263, 210 P2d 573. However, defendant, on the succeeding page of his brief, did set forth the pertinent portions of the transcript of testimony, which we have carefully considered. The matter sought to be reviewed had to do with plaintiff's injuries for which she claimed damages, in that after the wound complained of was healed, and after a skin graft had been performed, a declivity of about three-and-a-half inches in diameter and about the depth of a shallow ashtray was still discernible on plaintiff's back. The evidence was therefore completely relevant. This court has previously held that "where an issue as to personal in-

jury is involved, an injured person may be permitted to exhibit to the jury the wound or injury, or the member or portion of his body upon which such wound or injury was inflicted." *Sears v. Goldsmith,* 136 Or 151, 158, 298 P 219. See also *Bowerman v. Motor Coach System,* 132 Or 106, 284 P 579 (glass eye removed in presence of jury); *Patterson v. Howe,* 102 Or 275, 202 P 225 (place of wound in jaw resulting from extraction of tooth); *Peters v. Hockley,* 152 Or 434, 53 P2d 1059; *Lampa v. Hakola,* 152 Or 626, 55 P2d 13, 26 RCL 1019, No. 16. If relevant, the exhibition is allowable in the discretion of the Court where there is no reason to expect that the sympathy of the jury will be excited. *Peters v. Hockley,* supra; *Lampa v. Hakola,* supra.

■ In the two cases last cited it was held to be an abuse of discretion where the injured person cried out in pain, which was to be expected under the circumstances. There was no demonstration of pain in the instant case, the trial judge having taken proper affirmative precaution to prevent such occurrence. We see nothing in the conduct of the court or of the way in which the exhibition was conducted or in the question of relevancy or competency which in any way constituted prejudicial or reversible error.

The defendant next assigns as error the denial by the court of defendant's motion for a directed verdict "on the ground and for the reason that to let this case go to the jury would be to permit the jury to speculate as to any damage the plaintiff has allegedly received as a result of any treatment. There has been no proof that she was injured by any act of the defendant, Rose Sanford." From that, plaintiff argues that the only issue raised by this motion was whether or not there was any evidence that the defendant's

negligence was a proximate cause of the damages to plaintiff. Plaintiff further says that since defendant has wholly failed to argue this point in her brief she has abandoned it, particularly since the ground asserted in defendant's brief is concerned with insufficient evidence to support the verdict. See *Ingalls v. Isensee,* 170 Or 393, 398, 133 P 614, and cases there cited, to the effect that an appellant upon his motion for a directed verdict, is bound by the stated grounds of his motion and he may not for the first time on appeal urge additional grounds. See also, *Shaver Co. v. Eagle Star Ins. Co.,* 172 Or 91, 110, 139 P2d 769; *Woods v. Dixon,* 193 Or 681, 683, 240 P2d 520.

Assuming, however, that the word "treatment" as it was here used, with reference to the whole context, had to do with alleged negligence, we next pass to defendant's main contention, that of insufficient evidence to justify a verdict.

■ On defendant's motion for directed verdict all evidence favorable to plaintiff and reasonable inferences therefrom must be taken as true. *Pond v. Jantzen Knitting Mills,* 183 Or 255, 257, 190 P2d 141. Viewed therefore in the light most favorable to plaintiff, it appears from the testimony that plaintiff had been a sufferer from multiple sclerosis for a number of years, that the disease was progressive and that at the time complained of she had become more or less immobile and was confined to her bed. Further, she had no control over her bladder or bowels. It was also necessary that she be turned regularly at least every two hours in order to prevent bed sores from developing. It was also necessary that a catheter be used in order to keep urine from coming in contact with her body. Her husband testified in effect that there were no visible wounds, sores or abrasions on her back

prior to the time complained about. Plaintiff had been in another rest home about a week and then brought home for about a month, and in the condition described, placed in the "Sanford Rose Convalescent Home" owned and operated by defendant, for care and treatment, consisting in part, of the following particulars: Plaintiff's husband instructed the attendants in charge to turn the patient every two hours and that a catheter would be required to be used on his wife. It appeared that these instructions were also given, prior to admittance over the telephone, to a person at defendant's institution who claimed to be the owner and manager. It further appeared that persons in charge at the time of admission were informed that a Foley catheter was to be used. This was a particular type of catheter in that it remained fixed to the patient's body and conducted urine to a receptacle that remainded visibly beside the bed. There was a catheter at the convalescent home but plaintiff's husband, on advice of the family physician, Dr. Boyer, after a week elapsed, purchased and delivered two Foley catheters to defendant's institution. It further appeared that plaintiff's husband visited her regularly every evening and that he never saw the catheters in use. Of course, only the receptacle thereto attached could have been visible. He further testified that her bed was dirty nearly every time he came, from stools and urine. Defendant was on duty at night from 11 p. m. to 7:30 or 8 o'clock in the morning. Defendant slept upstairs from plaintiff's floor.

The plaintiff was unable to testify to any extent because of the disabilities occasioned by her disease. It further appeared from the testimony that it was necessary to turn the patient over every two hours because a pressure area develops from lack of circulation when

a patient who is unable to turn over in bed is left in the same position for too long a time. Dr. Boyer testified by deposition that a patient who was allowed to lie on her back for an extended period of time would reasonably probably develop bed sores and that the patient should be turned in any case within two hours. Dr. Boyer also testified in answer to a hypothetical question that in his opinion the vitality of plaintiff's tissues, because of her condition, was at low ebb and that the weight of her body would prevent the blood from flowing through, and the result would be that the tissues die and that when tissues die they have to "slough off" and that would be the "ulcer stage." It further appeared from Mr. Hendricks' testimony that he was told by the attendants that there was a little blister on his wife but they did not tell him the condition of it. When he did find out about it he had his wife moved to the Multnomah County Hospital. He testified further that at that time he saw the condition and that there was an impression on his wife's back on her tailbone about two inches deep and three inches in circumference that had rotted away and there was a large red area around it showing inflammation and that "you could see the spine." After the patient removed from defendant's rest home after a stay of three weeks, an operation was performed and the patient recovered from the operation, but was left with the scar heretofore described and other disabilities relating to scarring from the operation, and an inability to sit up. Dr. Boyer, in answer to a hypothetical question based upon the assumption that the patient, while at the defendant's convalescent home was not turned every two hours, and that a catheter was not used and that the patient had the condition described in an actual photograph (in evidence) of the sore on

plaintiff's back, testified that in his opinion the probable result would be that the body tissue would die and an ulcer would result and that the presence of urine and fecal matter would probably contribute to some extent but "would not necessarily be the whole cause by any means." He further gave as his opinion that if the patient was at the convalescent home during the period claimed and that if she was not turned, and allowed to lie in urine and fecal matter and developed the condition described in the photograph, such condition "undoubtedly" produced the sore. There was other testimony as to the necessity for turning a patient in plaintiff's condition at least once every two hours.

The patient's chart at the convalescent home during the first five days twice shows notation of "involuntary fecal and urine" and then on the sixth day the notation "catheter placed in attempt to keep urine from pressure area." On the third day there was a notation "catheter placed", appearing to be written in different ink from that of other notations on that page of the chart. Incidentally, the first four pages of the chart were written by a nurse from notes left by the other attendants, except for one notation.

From all this defendant argues that the evidence is purely speculative and therefore not sufficient to support a verdict.

■ There was direct evidence as to the absence of injury immediately prior to defendant undertaking the care of plaintiff, and direct evidence of plaintiff's condition upon her removal from such care. Much of the evidence was, however, circumstantial in nature. Circumstantial evidence may establish a fact as well as direct evidence. *Topco v. First National Bank of Portland,* 202 Or 32, 51, 273 P2d 420.

"* * * Circumstantial evidence fails its proponent if it comes from a source unworthy of belief, or if the premises cannot support the needed conclusion. It must also be sufficiently persuasive to negative all rival conclusions suggested by itself and which show nonliability in the opponent. * * *" *Sullivan v. Mount. States Power Co.,* 139 Or 282, 294, p P2d 1038.

The trial court submitted the case to the jury under two specifications of negligence alleged by plaintiff. One of these charged defendant with negligence in failing or neglecting to turn plaintiff in bed regularly or at all. The other specification charged defendant with negligence in failing to evacuate plaintiff's bladder by means of a catheter or otherwise. This court, after a careful review, is of the opinion that there was sufficient evidence to take the case to the jury under the specifications so submitted. It appears that most of the competent witnesses on both sides recognized the necessity of turning a patient in plaintiff's condition at least every two hours. There is no serious contention made that bed sores do not result from such failure and there was an abundance of testimony, both in direct and cross-examination, that bed sores do thereby result. There was the evidence of plaintiff's husband, who visited regularly, of the absence of any appearance of visible evidence of a Foley catheter which he had supplied, the charts from the convalescent home and references therefrom. There was also the failure to correctly apprise plaintiff's husband of her condition until about the time of her removal. There was also the direct evidence as to the instructions given for plaintiff's care. We will not undertake to reproduce all of the testimony, but taken together, we believe it amply justified the court in submitting

the case to the jury even though part of the evidence was circumstantial.

There was, of course, evidence adduced on the part of defendant contraverting that submitted on behalf of plaintiff, and which, if believed, could have resulted in a verdict for defendant. This court will not, however, interfere with a jury's findings supported by substantial testimony by substituting its judgment for that of the jury on question of fact. *Dunning v. Northwestern Electric Co.,* 186 Or 379, 392, 199 P2d 648, 206 P2d 1177. Defendant argues that opinion evidence cannot sustain a case of a litigant when not supported by the proved facts, citing *Sloan v. Sloan,* 303 Ky 180, 197 SW2d 77. However, in this case we are of the opinion that the expert testimony was borne out by other testimony in the case.

At the time of hearing on the appeal, defendant orally demurred to plaintiff's complaint on the ground that it did not state a cause of action. In support of this it is claimed that the complaint does not allege a duty or allege facts that would give rise to such duty, and further, since the duty arises on contract there is no allegation of acceptance of duty. The complaint alleges that "helpless from a disease known as multiple sclerosis" plaintiff "entered said convalescent home as a patient for care and treatment for which plaintiff then and there paid a sum of money as consideration for such care and treatment" and that she remained under defendant's care and that it was necessary to turn her and evacuate her bladder by the use of a catheter."

A complaint for injuries resulting from negligence should allege what duty was imposed or state facts from which the law would imply a duty and a

breach thereof. *Kennedy v. Hawkins,* 54 Or 164, 167, 102 P 733; *Christopher v McGuire,* 179 Or 116, 120, 169 P2d 879. There is nothing in the record to show that a demurrer was ever interposed in the trial court or that the complaint was subjected, either to motion to strike or to make more definite and certain. Upon appeal, a complaint not demurred to or moved against in the trial court, "every reasonable inference is resolved in support thereof." *Sterrett v. Hurlburt et al.,* 129 Or 520, 522, 275 P 689, 278 P 986. Since the complaint alleged generally a duty to care and treat, and since it is alleged that the plaintiff paid for it, and further alleged what was necessary in the way of care, we hold that in the absence of an attack in the court below, it is sufficient.

Affirmed.