### Board of Councilmen of the City of Frankfort v. Bowen's Administratrix.

(Decided October 28, 1924.)

### Appeal from Franklin Circuit Court.

1. Municipal Corporations—City Not Liable for Negligence of Firemen.—Firemen on way to fire were engaged in governmental duty and city was not liable for their negligence.

2. Municipal Corporations—Duty to Maintain Street in Reasonably Safe Condition.—Where city has opened street, it is its duty to construct and maintain it in reasonably safe condition for ordinary travel, and it will be liable for injuries caused by obstructions that interfere with such use if made by itself, or if made by another when it has notice thereof, or by exercise of ordinary care should have such notice.

3. Municipal Corporations—Whether Permitting Street to be Filled to Within Eight Feet of Overhead Trestle Negligence Held for Jury.—Whether city was negligent in maintaining street under railroad trestle, surface of which had been raised so as to give only eight feet between pavement and trestle, held for jury.

4. Municipal Corporations—Mere Licensee on Fire Truck May Recover for Negligent Maintenance of Highway.—Mere fact that intestate on fire truck, with knowledge of firemen, was a mere licensee would not bar recovery for his death, caused by negligent construction or maintenance of highway under railroad trestle.

5. Municipal Corporations—Licensee on Fire Truck Held Negligent in Climbing on Top when Truck was Going Under Railroad Trestle. —Licensee on fire truck held guilty of contributory negligence as matter of law in climbing on top of body as truck was going under railroad trestle.

JAMES H. POLSGROVE for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Reversing.

At the intersection of Wilkinson and Broadway streets in the city of Frankfort, the Louisville & Nashville Railroad Company, in the year 1852, constructed and has since maintained an overhead trestle forty-eight feet long across Wilkinson street. This has been renewed since, but it does not appear that there were any changes in the plan or lowering of the structure.

While riding on top of a truck of the fire department of the city, going down Wilkinson street *en route* to a fire, William R. Bowen collided with that trestle and received injuries which produced his death.

In a suit by his administratrix against the city and the railroad company for damages, a directed verdict was given in favor of the railroad company and a verdict and judgment of $3,500.00 was awarded against the city. The city has appealed from the latter judgment and the administratrix of Bowen's estate has appealed from the former.

There is evidence that the lowest depression in the street is immediately beneath the trestle, and from this point there is a slight upward grade in each direction; that earth and other materials gravitate to this depression, and that by slight accretions it has from time to time been raised; that the city in improving the streets has added ballast and that in these ways the distance from the surface of the street to the bottom of the trestle has been diminished as much as eighteen inches in the past fifteen years, though this is contradicted by the witnesses for the city.

The present height of the bottom of the trestle from the surface of the street varies from eight feet to eight feet six inches, it being eight feet four inches at the place of collision. It further appears that on numerous occasions within the past few years the passage of vehicles with high tops, and wagons carrying high loads have been obstructed at this point, though it does not appear there had been any personal injury prior to this case.

The fire truck consists of a body or bed placed over the chassis, the inclosed sides of which are something over six feet in height, with an eighteen inch railing around the top, making the total height about seven feet eight inches. Within the body or bed is carried the hose, chemical apparatus and other accessories of the department which fill the body, extending up in the inclosure surrounded by the railing. The driver's seat is about four feet high. There is a running board on each side of the truck and at the rear end. Two of the department ride in the seat and the others on the side and end running boards, there being handholds for them to grasp, and also a ladder on each side. There is no place in the bed for anyone to ride, though one could ride upon top of the hose, but it does not appear that anyone had ever done so prior to this occasion.

Bowen had been a member of the fire department during the year 1913, and while in the service had occasion to use the street under this trestle when going to fires. He had been engaged in painting since that time, but spent a great deal of time at the engine house and frequently attended the members of the department on their calls. Possibly he had lived in Frankfort longer, but at all events he must have been perfectly familiar with the location of this trestle and its height.

On the evening of the collision he was at the engine house when an alarm was turned in, and without an invi-

tation he mounted the truck with the other members of the department to go to the fire. The engine house was situated on Main street, about two and one-half blocks from the trestle, which was on the regular route to the scene of the fire. The truck ran west down Main street a block and a half and turned into Wilkinson street, a block from the trestle. Just after this turn one of the men riding on the rear platform saw Bowen climbing the ladder over the top of the truck and shouted twice to him to "look out," but Bowen either did not hear him or did not understand the warning, and in a very short time thereafter the collision occurred. The driver had no knowledge of Bowen's presence on the truck and no one saw him at the exact time the injury occurred, hence his position at that time is unknown.

It is conceded that the firemen were engaged in a governmental duty and the city is not liable for any negligence on their part. O'Daly v. City of Louisville, 156 Ky. 816; Greenwood v. City of Louisville, 13 Bush 226; Davis v. City of Lebanon, 108 Ky. 688; City of Louisville v. Carter, 142 Ky. 443. The case, however, is predicated on the theory that, as constructed and maintained, the trestle was an obstruction to travel on the streets and that this was due to the negligence of both defendants.

Counsel for the city in his brief complains of the court's refusal to give certain instructions offered by him, and criticises the instructions given by the court, but the only exception appearing in the record was to the refusal of the court to give a peremptory instruction, and as it is admitted that the pleadings are sufficient to sustain the verdict and judgment, the only question to be considered is whether the court erred in refusing that instruction.

Where a city has opened a street for public travel it is its duty to construct and maintain it in a reasonably safe condition for ordinary travel and it will be liable for injuries caused by obstructions that interfere with such use if made by itself; or if made by another when it has notice thereof, or by the exercise of ordinary care should have such notice. Clay City v. Abner, 26 Rep. 603; Teager v. City of Flemingsburg, 109 Ky. 749; Bridwell v. Louisville, 150 Ky. 589.

It is strongly argued that the height of the trestle above the surface was sufficient for the demands of ordinary travel; that the city was not required to anticipate vehicles or trucks of unusual or extraordinary height; that threshing machines, derricks and other machines of

like character are sometimes moved upon the public highways and certainly the city would not be required to make provision for such.

Without going to such extreme, it is in evidence that hearses, trucks, wagons loaded with tobacco and furniture, and other vehicles have been caught beneath this trestle, and further that the city has permitted the height of the trestle from the surface of the street to be diminished by raising the street, hence we conclude that it was for the jury to determine whether the city had discharged its duty above set out.

A more difficult question arises in determining whether the intestate was guilty of such contributory negligence as would bar a recovery. It was argued with great force that he was a trespasser or at best a licensee on the truck at the time of the injury, and therefore the city owed him no duty until after his peril was discovered. We do not think that principle of law applicable to this case. If the liability was predicated on the negligence of the firemen in the conduct of the truck the point would be well taken, but as indicated above they were discharging a governmental duty, and the city is not liable for any negligence on their part. So that if intestate was upon the truck with the knowledge of the firemen and at a place where they were accustomed to ride, even though a mere licensee, he would not on that account be barred of recovery. Here, however, we have a different state of facts. The deceased had known the street and trestle for nine years or longer and was necessarily familiar with them. He knew the location of the fire and that when the truck went west and turned into Wilkinson street that it must pass under the trestle. He was also familiar with the truck and with the fact that the firemen did not ride on its top and necessarily knew that it was hazardous to attempt to climb over the railing when it was in motion, or to ride under the trestle in that way. It is immaterial as to whether he was riding with or without an invitation. He mounted the truck at the proper place and if he had remained there, could have ridden through in safety under the trestle or elsewhere. But for some inexplicable cause he left his place of safety and voluntarily climbed over the railing of the rapidly moving truck; this was not in connection with any duty of the fire department or in obedience to the request of any of its members.

Possibly he may have intended to climb into the bed and lie down, possibly he thought he might sit down,

but whatever his intention, in reckless and wanton disregard of his own safety he took the chance of carrying it out, and in so doing met his untimely end. This would constitute such contributory negligence as would bar a recovery if the negligence of the city is conceded, and for this reason the peremptory instruction asked for in its behalf should have been granted.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.