WHITE v. CITY OF CASPER, ET AL.*
(No. 1377; October 4, 1926; 249 Pac. 562.)

Municipal Corporations—Protection From Fires—Liability for
Reckless Use of Fire Apparatus—Automobiles—Enforcement
of Parking Ordinances—Accidents Caused by Street Sprink-
ling—Speed Ordinances—Fire Trucks—Emergency Calls.

1. Maintenance of city fire department is governmental func-
   tion.

2. In absence of statute, municipality is exempt from liability
   for injuries to persons or property from malfeasance or
   nonfeasance in maintenance and operation of fire depart-
   ment.

3. To drive a fire apparatus to a fire negligently or recklessly,
   and without control of the apparatus, and on the wrong
   side of the street, or in a street which is crowded where
   it was unnecessary to drive, and to have a fire alarm
   system which was defective, or to hire or retain an in-
   competent servant in connection with such department,
   though incompetency of servant is known, are acts of
   negligence in operation of a fire department of a city for
   which city is not liable.

4. City is not liable because of nonenforcement of parking
   ordinance by reason of which plaintiff was unable to find
   parking space along curb so as to avoid collision of fire
   apparatus with his automobile.

5. Failure of city to enforce parking ordinance, by reason of
   which plaintiff was unable to find a parking space for his
   automobile along curb of street so as to avoid collision
   with fire apparatus, if negligence, *held* merely a condition
   and not the proximate cause of the injury, efficient cause
   being negligent driving of fire apparatus.

6. Generally, except where nuisance is created, municipality
   is not liable for nonenforcement of ordinances.

7. City *held* not liable because it sprinkled street over which
   fire apparatus was negligently driven and caused to col-
   lide with plaintiff's automobile, since sprinkling of streets
   is not negligence though it makes street slippery.

8. Generally where a municipality exercises governmental
   functions in operating fire apparatus, and statute is
   passed to regulate speed of vehicles generally, it will not
   be assumed that regulation was intended to apply to

operation of such fire apparatus unless intention is couched in express terms or is manifested by unavoidable implications.

9. Fire trucks are not considered as coming within designation of "ordinary vehicles" within statute regulating speed of vehicles generally.

10. Under Comp. St. 1920, § 3487, exempting fire vehicles from speed regulations when answering "emergency calls," any actually existing fire is an emergency which justifies excessive speed and exempts municipality from liability for operation of fire apparatus at an excessive speed.

*See Headnotes: (1, 2) 28 Cyc. p. 1303 n. 69; p. 1304 n. 72. (3) 28 Cyc. p. 1304 n. 72. (4-6) 28 Cyc. p. 1289 n. 26; p. 1356 n. 38; p. 1407 n. 66. (7) 28 Cyc. p. 1304 n. 72. (8-10) 28 Cyc. p. 34 n. 84 New.

APPEAL from District Court, Natrona County; CYRUS O. BROWN, Judge.

Action by Thomas F. White against the City of Casper and others. There was judgment for defendants on demurrer, and plaintiff appeals.

*Hal Curran,* for appellant.

Sections 3487-3489 is the only statute law applicable to this case; the fire truck was not answering an emergency call, and was restricted to a speed limit of 25 miles per hour; fire apparatus, propelled by motor, is not excepted from the law; Opocensky v. City, L. R. A. 1917 E. 1170; especially when not answering a call demanding excessive speed; Sexton v. Rockhill, 93 S. E. 180; Martin v. City, 61 So. 197; Frederick v. Columbus, 51 N. E. 35. Even where exempt from speed regulations, drivers of fire apparatus are not relieved from the duty of driving carefully in congested centers or obeying rules of the road; Kaufman v. City, 94 So. 697; Aldrick v. City, 140 N. E. 164; Wheeler v. City, 19 O. S. 19. The city is clearly liable; Cunningham v. Seattle, 4 L. R. A. N. S. 630; Hillstrom v. St. Paul, 159 N. W. 1076; Brown v. Wilmington,

90 Atl. 44; Maxwell v. Miami, 100 So. 147; Bowden v. K. C., 77 Pac. 573.

*E. H. Foster, R. M. Boeke,* and *Robert N. Ogden, Jr.,* for respondents.

In providing fire protection, the city is exercising a governmental function and is not liable for negligent performance; Hillstrom v. City, 159 N. W. 1076; Dodge v. Granger, 15 L. R. A. 781; Cunningham v. Seattle, 4 L. R. A. N. S. 629. A municipal corporation is not liable for failure to enforce the provisions of an ordinance in the exercise of its governmental power as distinguished from its private corporate power; Addington v. Town, (Colo.) 115 Pac. 896, and cases cited; Fifield v. City, (Ariz.) 36 Pac. 916. It is a significant fact that the Ohio Supreme Court in Aldrich v. City, 140 N. E. 164, reversed its decision in Fowler v. City, 100 O. S. 158; 126 N. E. 72; 9 A. L. R. 131.

BLUME, Justice.

This is a suit brought by the plaintiff and appellant against the City of Casper and others, respondents herein, to recover the sum of $21,057.92 as damages resulting from a collision of a fire truck of said city with plaintiff's automobile. A demurrer was filed to the amended petition of plaintiff and was sustained on the ground that the facts alleged were insufficient as a cause of action. The plaintiff refusing to plead further, judgment was rendered for the defendants, from which the plaintiff has appealed.

The co-defendants of the city are the persons who were engaged in the active operation of said city's fire department. Nothing is said in the briefs, however, as to their liability, and the only question presented is as to whether or not the amended petition filed in this case is sufficient to disclose a liability on the part of the City of Casper, and we shall confine our discussion to that point. The collision aforesaid happened, as disclosed by the amended

petition, between two and three o'clock in the afternoon of October 7, 1921, on Center Street in said city. A fire alarm, operated by said city, sounded while plaintiff, in a Marmon car, was driving south on said street and while crossing the intersection of First with Center Street. Immediately after hearing the fire alarm, plaintiff attempted to turn his automobile close to the curb, in obedience to the ordinances and traffic regulations of said city. No parking space along the curb was available, and he, accordingly, parked his car paralled with the curb and as close to the other cars there parked as possible. Shortly thereafter a fire-truck of said city drove into and collided with plaintiff's automobile, demolishing it and inflicting bodily injuries upon plaintiff. A claim for his damages was duly filed with, and rejected by, said city.

In addition to these facts, plaintiff pleaded the following, as a basis for holding the city liable, namely: (a) that the fire truck was, at the time of the collision, operated by the duly authorized agents of the city at a high and dangerous rate of speed; (b) that the fire, to which the fire-fighting apparatus was taken at the time mentioned, was located at or near the building designated as 425 East First Street, far out of the congested district of said city; that the fire-truck could have been taken to the scene of the fire easily by avoiding such congested district; that the locality of the fire did not constitute a "grave fire-hazard," and that the danger from fire did not justify excessive speed; (c) that the said fire-truck was driven along Center Street, and that portion thereof which, at the time of the accident, was the most congested part of the city; that by taking this street the distance to the fire was greater than if less congested streets had been taken, and that Center Street was taken merely for show and display, as was well known to the managing authorities of said city; (d) that said city had, immediately prior to said collision, sprinkled said Center Street, rendering

it wet, slippery and dangerous for a few blocks each way from the scene of said collision; that such dangerous condition could have been seen by the agents of the city operating said fire-apparatus in ample time to have avoided it; (e) that the driver of said fire truck was incompetent, incapable and inexperienced; that he was at the time suffering from eye-trouble and was under the care of an eye-specialist, all of which facts were well known to the city; (f) that the city neglected and failed to enforce its "thirty minute" parking ordinance, leaving plaintiff without parking space; that had such ordinance been enforced, appellant could have escaped injury; (g) that the driver of said fire-truck lost control thereof; that it skidded to the right and to the left, and did not stay on the right side of the street; that said driver was able to see appellant for a distance of 900 feet and could have avoided the accident by slacking his speed and regaining control of said truck; (h) that the fire alarm, owned and operated by said city, was defective, so that it could not be heard in the congested portion of said city, all to the knowledge of said city.

1. We pointed out in the case of Ramirez v. City of Cheyenne, (Wyo.) 241 Pac. 710, 42 A. L. R. 245, that it is held almost without dissent that the maintenance of a fire department is a governmental function. And the decisions are nearly unanimous to the effect that in the absence of statutory provisions to the contrary, a municipality is exempt from liability for injuries to persons or property resulting from malfeasance or nonfeasance in the maintenance and operation of a fire department by such municipality. These decisions, numbering about 100, are cited and reviewed by exhaustive notes in 9 A. L. R. 143-157, and in 33 A. L. R. 688-691. The more recent cases are to the same effect; Rollow v. Ogden City, (Utah) 243 Pac. 791; Young v. Lexington, 212 Ky. 502, 279 S. W. 957; Mabe v. Winston-Salem, 190 N. C. 480, 130 S. E. 169;

Gregorie v. Lowell, (Mass.) 148 N. E. 376; Floris v. Jersey City, (N. J.) 129 Atl. 470; 40 A. L. R. 1353; Board v. Bowen's Admx., 205 Ky. 309, 265 S. W. 785; Barnes v. Waco, (Tex. Civ. App.) 262 S. W. 1081. The contrary rule is held by very few cases, mainly by Kaufman v. City of Tallahassee, 84 Fla. 634, 94 So. 697, 28 A. L. R. 471, and Tallahassee v. Kaufman, 87 Fla. 119, 100 So. 150. The case of Fowler v. Cleveland, 100 O. S. 158, 126 N. E. 72, 9 A. L. R. 131, was to the same effect, but was expressly overruled in the later case of Aldrich v. Youngstown, 106 O. S. 342, 140 N. E. 164, 27 A. L. R. 1497.

We held in the Ramirez case, supra, that a municipality might be held liable under certain circumstances for damages caused by dangerous appliances left in a park, and in the case of Opitz against the Town of Newcastle, decided this day, it is held that a municipality is liable for damages resulting from leaving an open hole in a street therein without maintaining protective barriers or other signals to warn travelers of danger, but we cannot extend the rule of these cases to the case at bar. We do not believe that we are warranted in departing in this case from the principle that a municipality is exempt from liability in its operation of a governmental function, and in deciding, contrary to the overwhelming weight of authority, that a municipality is liable for negligence in the operation of its fire department, unless there are special facts in the case by which we would be justified to take it out of the general rule. In the note to 9 A. L. R. 150 and 151, illustrations are given as to when a municipality is exempt from liability for acts in connection with the operation of such department. Instances of that kind are as follows: for negligent driving of a fire apparatus in going to a fire; for carelessness of a fireman in drawing a hose cart against a person on a public street while answering an alarm of fire; for negligent driving in going from a fire back to a firehouse for more hose to use in fighting a

fire; for reckless driving of a fire apparatus, negligently running down a pedestrian on a street. It is clear that at least most of the acts of negligence alleged in the case at bar come within the principle of these cases. To drive a fire apparatus to a fire negligently or recklessly, and without control of the apparatus, and on the wrong side of the street, or in a street which is crowded where it was unnecessary to drive, and to have a fire alarm system which was defective, are clearly acts of negligence in the operation of the fire department of the city for which, under the rule of the cases mentioned, the city is not liable. And that is no less true where the city hires or retains an incompetent servant in connection with that department, though the incompetency of the servant is known. This specific point has been decided in the case of Higgins v. City of Superior, 134 Wisc. 264, 114 N. W. 490, 13 L. R. A. N. S. 994, where the court said in part:

"The gravamen of the complaint is the negligence of the driver of the team, and the omission of the city authorities to fully discharge their public duty by selecting and retaining him in the employ of the city with knowledge of his negligent conduct and intemperate habits. Unquestionably the city officers were remiss in their official duties, as to selection and retaining an incompetent and reckless driver to take charge of a team connected with the city's fire department. Such neglect of duty, however, constitutes no legal ground for holding the city liable for the damages resulting therefrom."

2. It is claimed that the city is liable because of the non-enforcement of its parking ordinances, by reason of which plaintiff was unable to find a parking space along the curb of Center Street at the time of the collision. It is clear, however, we think, under the allegations of the amended petition, that such negligence, if any, was merely a condition and not the proximate cause of the injury.

The efficient cause was the alleged negligent driving of the fire-apparatus along Center Street, and brought about the accident and was the proximate cause thereof. Lemos v. Madden, 28 Wyo. 1, 200 Pac. 791. Further, it is the general rule that, except in cases, perhaps, where a nuisance is created, which is not true in this case, a municipality is not liable for the non-enforcement of its ordinances. 28 Cyc. 1289, 1356, 1357; see Bradley v. Oskaloosa, 193 Ia. 1072; 188 N. W. 896.

3. Nor can the city be held liable because it sprinkled the street over which the fire-apparatus was negligently driven. There can be no question that the city had a perfect right to sprinkle its streets. That is one of the functions of a municipality very commonly exercised, and of importance to the health and welfare of the citizens of the community. The sprinkling of a street, especially a paved street, necessarily makes it slippery for the time being, but that itself can not be held to constitute negligence. Such condition must, of course, be taken into consideration in driving along the street, and failure to do so may constitute negligence; and when the driver of the fire-apparatus in the case at bar failed to take the slippery condition of Center Street into consideration, so that the fire-apparatus swerved from one part of the street to the other, he was, perhaps, negligent, but this negligence was in the operation of the fire department of the city, a governmental function, and for which the city, according to the general rule, cannot be held liable.

4. One other point is still to be considered. Plaintiff alleged in his amended petition that there was a fire to which the fire-apparatus was driven at the time of the accident in question, but stated that the locality of the fire did not constitute a grave fire-hazard, and that the danger from fire did not justify excessive speed. It is the theory of counsel for the plaintiff, that there must have

been an actually existing emergency, as proven by the facts, which would justify excessive speed, in order to exempt a municipality from liability for damages caused thereby, and that inasmuch as the existence of such emergency was negatived by the amended petition, the demurrer thereto should have been overruled. This theory is based upon the provisions of the motor-vehicle law of this state. Now the general rule is that where, as here, a municipality exercises governmental functions in operating fire-apparatus, and a statute is passed for the purpose of regulating the speed of vehicles generally, it will not be assumed that the regulation was intended to apply to the operation of such fire-apparatus unless such intention is couched in express terms or is manifested by necessary or unavoidable implication. Fire-trucks are used for a special purpose only, and are not used or intended to be used on the streets for either pleasure or business purposes, and are not considered as coming within the designation of ordinary vehicles. Rollow v. Ogden City, supra, and cases in note to 19 A. L. R. 459. We find no mention, express or implied, in our motor-vehicle law of any fire-apparatus, except in section 3487, W. C. S. 1920, in force at the time of the accident in the case at bar, and bearing the foregoing rule in mind, the section just mentioned is the only one which could have a bearing on the case at bar. That section, in so far as it may relate to cities and towns, is as follows:

"No motor vehicle shall be operated within any city or town at a speed greater than twenty miles per hour, nor at a rate of speed such as to endanger the life or limb of any person, having regard for the traffic, use and condition of the road or other public highway. Upon approaching the intersection of highways, or a bridge or a sharp curve, or a steep descent, or another vehicle, or an animal or a person outside of any city, or town, the person operating the motor vehicle shall give a timely signal with

his bell, or horn, and shall reduce the speed of such motor vehicle to a reasonable rate, and shall not exceed such speed until entirely past such intersection, bridge, curve, descent, vehicle, animal or person. Upon approaching any place where passengers are getting on or off street cars, every person operating a motor vehicle shall bring such vehicle to a full stop, and shall not start again until said street cars have started. Provided that the speed limits in this section shall not apply to physicians or surgeons, or police or fire vehicles, or ambulances, when answering emergency calls demanding excessive speed.''

A similar provision was before the court in the case of Opocensky v. City of South Omaha, 101 Nebr. 336, 163 N. W. 325; L. R. A. 1917E 1170. In that case an automobile, used in connection with the fire department, was driven negligently along a street at a high and dangerous rate of speed, in order to test it out and not while answering a fire-call. The court held that no emergency existed, that the exemption in the statute as to speed did not apply, and that, under the circumstances, the city was liable for damages caused by the dangerous and excessive speed. The case has no application to the case at bar, for here the existence of a fire at the time of the accident, and the fact that the fire apparatus, which collided with plaintiff's automobile, was being driven to this fire, is not questioned. We think that the exemption mentioned in the statute above quoted contemplates that an actually existing fire in the city is an emergency which justifies excessive speed, and that the men operating the fire department may construe it to be such. Whether a fire in a city is or is not of a grave character cannot, in many cases, be determined in the first instance. It may or may not be, depending on many different circumstances. A fire that at a casual glance would appear insignificant, might, under favorable conditions, be turned into a conflagration. We cannot believe that the legislature intended that the character

and extent of the fire must, in order to justify excessive speed, be determined beforehand—and that at the peril of the city.

We think the demurrer was properly sustained. The judgment below must accordingly be affirmed, and it is so ordered.

*Affirmed.*

Potter, C. J., and Kimball, J., concur.