Argued January 16; reversed and remanded February 17, 1931

# KRAUSE *v.* SOUTHERN PACIFIC CO. ET AL.

(295 P. 966)

*Gunther F. Krause,* of Portland (Lord & Moulton, of Portland, on the brief), for appellant.

*Clarence J. Young,* of Portland (Ben C. Dey and Alfred A. Hampson, both of Portland, on the brief), for respondent Southern Pacific Co.

*Chris Schuebel,* of Oregon City, for respondent Oregon City.

BELT, J. Plaintiff seeks to recover damages for personal injuries sustained through the alleged negligence of the defendants in causing him to come in contact with an overhead railroad trestle of the defendant company, which crosses, at right angles, Fourteenth street in Oregon City. At the conclusion of plaintiff's case in chief, the court allowed defendants' motion for a judgment of involuntary nonsuit. Questions presented on appeal make it necessary for a somewhat detailed statement of the facts.

About noon on November 10, 1924, plaintiff was riding in a three and one-half ton freight truck which he and his father had hired to transport some hogs from Portland to their farm near Canby, Oregon. The father was riding in the seat with the driver and plaintiff was standing on the bed of the truck behind a pen of hogs which he was watching in order to keep them from fighting. As the truck, which was going west, passed under the north side of the trestle, plaintiff's head came violently in contact with one of the steel girders of the trestle and he was thrown to the ground with a fractured skull.

The railroad trestle extended across the entire width of the street and, on the north side thereof, had a clearance above the pavement of about ten feet and two inches. On the south side of the street the clearance was about eleven feet. The street under the trestle sloped gently upward towards the west. In other words, there was a difference of approximately two inches in clearance between the east side and the west side of the trestle. Steel girders about three feet wide vertically—which were painted black—formed the lower part of the trestle. There was no "impaired clearance" sign on the structure.

The truck in which plaintiff was riding was not covered, excepting over the driver's seat. The record is not clear as to the height of the canopy over the driver's seat, but it must have been somewhat less than the height of plaintiff, who was five feet eleven inches tall, as the top of the truck was not injured in passing under the trestle. However, a witness who saw the accident testified, without objection, that the canopy over the seat "obstructed his (plaintiff's) view of the trestle as he was coming along." There is testimony that the truck in question was of the com-

mon type used to haul freight and gravel—the bed being five feet above the surface of the pavement— and that it was customary for men to stand on the floor of such trucks while engaged in their work in moving from one place to another.

Plaintiff admitted that in going from his farm to Portland he had passed under the trestle many times, but stated that he was in closed vehicles and therefore had no definite knowledge as to the clearance. He said he did not see the trestle before being struck. In response to the question: "If you had been looking there was nothing to prevent you from seeing it?" he testified: "I don't known which way I was looking. I kept my eyes on the hogs." Two of the 13 hogs had been recently acquired and, according to the testimony of plaintiff and his father, it was necessary to keep constant watch over the herd to prevent injury from fighting. Plaintiff had a long stick or switch which he used while working with the hogs.

Fourteenth street is a part of the East Side Pacific highway and has a very heavy traffic. Evidence was offered to show that ordinary freight trucks frequently came in contact with this trestle and that their hoods and tops were wrecked. Plaintiff also offered to prove that various persons riding on trucks were injured as a result of the alleged impaired clearance. Such evidence was offered on the theory that it tended to bring notice to the defendants of the danger of this trestle to those using the public highway. The court rejected the offer of proof on the ground that such evidence presented a collateral issue. It might also be observed at this juncture that there was evidence, received without objection, that the defendant railroad company some years after this accident, increased the clearance of the trestle 25⅛ inches.

The specific charges of negligence against the railroad company are: (1) That it constructed and maintained its overhead crossing at a height insufficient for the safe passage of persons making ordinary use of the public highway; (2) that it failed to maintain any notice of impaired clearance. The city is alleged to have been negligent in that: (1) It permitted the maintenance of an obstruction dangerous to persons using the street in vehicles of ordinary type and construction; (2) it failed to maintain notice of impaired clearance.

The defendant railroad company's motion for nonsuit is predicated upon three propositions: (1) The driver of the truck was an agent of the plaintiff and was negligent in failing to call the latter's attention to the trestle and in failing to slow down in order to avoid injury; (2) There was no evidence that defendant's alleged negligence was the proximate cause of the injury; (3) Plaintiff was guilty of contributory negligence as a matter of law. The motion of the defendant city for nonsuit is based upon the additional ground that there is no evidence that the city ever granted the railroad company a franchise to construct the trestle in question, but that it was constructed by virtue of an act of the legislature.

■ There is no merit in the contention that the alleged negligence of the driver of the truck is to be imputed to plaintiff. The driver was in the employ of W. H. Luckey, owner of the truck, who was paid to transport the hogs. Luckey was an independent contractor. Plaintiff had no control over the operation of the truck. Indeed, there is no evidence of excessive speed or that the driver could reasonably have done anything to prevent the injury. It was not his business to look after plaintiff.

■■ In our opinion there was evidence tending to support the charge that defendants were joint tortfeasors. It was the duty of the railroad company to so construct its trestle as to afford clearance for ordinary vehicular traffic: *Brown v. Southern Ry. Co.,* 111 S. C. 140 (96 S. E. 701); *Board of Councilmen of the City of Frankfort v. Bowen's Adm'x,* 205 Ky. 309 (265 S. W. 785); *Cooke v. Boston & Lowell Railroad Corp.,* 133 Mass. 185; *Boyd v. Kansas City,* 291 Mo. 622 (237 S. W. 1001); White on Personal Injuries on Railroads, § 909; 22 R. C. L. 991. The company was not bound to anticipate that injury would result to those using vehicles of an unusual or extraordinary type, but the truck in question does not, in the light of the evidence, fall within such class. The statute authorizing the company to cross over or above the streets of a city certainly did not contemplate an obstruction dangerous to those making ordinary use of the public highways.

■■ As to the liability of the city, the rule is thus stated in *Board of Councilmen of the City of Frankfort v. Bowen's Adm'x,* supra:

"Where a city has opened a street for public travel, it is its duty to construct and maintain it in a reasonably safe condition for ordinary travel and it will be liable for injuries caused by obstructions that interfere with such use if made by itself, or if made by another when it has notice thereof, or by the exercise of ordinary care should have such notice."

Also see McQuillan on Municipal Corporations, § 2750, and Elliott on Roads & Streets (2d Ed.), § 785. The gravamen of the charge against the city is that, after having had notice of its dangerous character, it permitted the maintenance of this impaired clearance. If it be said that the city had no authority to compel the

railroad company to raise its trestle, we can see nothing to prevent it from lowering the grade of the street in order to give greater clearance. It was the clear duty of the city to maintain its streets in a reasonably safe condition for public travel: *Knight v. City of La Grande,* 127 Or. 76 (271 P. 41, 61 A. L. R. 256).

■ We think error was committed in rejecting the offer of proof that other vehicles of like character had met with difficulty in passing under this trestle on account of insufficient clearance. Such evidence would tend to establish notice to the defendants of the danger of the obstruction: *Sheard v. Oregon Electric Railway Co.,* 131 Or. 415 (282 P. 542); *Brown v. Southern Ry. Co.,* supra; *Board of Councilmen v. Bowen's Adm'x.,* supra; 10 R. C. L. 940.

■ The trial court was right in sustaining objection to the following question: "Mr. Smith, was the trestle high enough on the day of this accident to allow an ordinary or usual truck to pass under this trestle without injury?" This was not a matter for expert opinion, but was a question strictly within the province of the jury.

■ The close question in the case is whether it can be said, as a matter of law, that the plaintiff was guilty of contributory negligence. It is only in the clearest of cases that a court is warranted in withdrawing this question from the consideration of the jury. If there can be but one reasonable deduction from a given state of facts; if there is no reasonable debate as to the conclusion to be drawn, the court may so declare. Otherwise, it is exclusively within the province of the jury to say whether plaintiff exercised due care to avoid injury. The difficulty lies, not in the statement of the law, but rather in its application. Each case must be read in the light of its own facts, and for such reason

it is not helpful to review at length the many cases cited. Each one is in some particular distinguishable on the facts from the one at bar: *Brown v. Southern Railway Co.*, supra, most strongly supports the theory of plaintiff. Cases where the party injured was riding in an unusual place, such as on top of a load of hay (*Falahee v. City of Jackson et al.*, 212 Mich. 422, 180 N. W. 507) or on a load of wood (*Gulf C. & S. F. Ry. Co. v. Montgomery*, 85 Tex. 64, 19 S. W. 1015) or on top of a fire truck (*Board of Councilmen v. Bowen's Adm'x*, supra) are not in point. In our opinion the fallacy of defendants' contention, relative to the question of contributory negligence, lies in assuming that plaintiff was riding on the truck at an unusual or extraordinarily hazardous place. The evidence is to the contrary.

In the absence of notice to the contrary plaintiff had a right to rely upon the assumption that defendants would not maintain an obstruction to the highway which would be dangerous to those using it by ordinary means of travel. It was not bound to anticipate the negligence of defendants unless it was of such nature as would attract the attention of a person of ordinary prudence and caution. We think it is exacting too high a degree of care to hold that plaintiff was bound to keep his eyes constantly on the direct line of travel looking for defects in the highway, which should not exist. Of course, if the danger was so obvious that a person in the exercise of ordinary care would have seen it, plaintiff would be deemed to have had notice of it. While the evidence is clear that plaintiff knew of the existence of the trestle, as he had passed under it many times, it is reasonable to infer that he had no definite knowledge as to its clearance above the pavement. He had just passed in safety

under a similar trestle, having a slightly greater clearance, about 200 feet distant from the one where he was injured. This may have caused him to rely more strongly upon the assumption that the trestle further west was of like clearance. The evidence shows that plaintiff's injury was a fracture of the frontal bone at about the hair line. In view of the slope of the pavement under the trestle in question, it was possible for him to have passed safely under the steel girder on the east side of the trestle and yet have come in contact with the steel girder on the west side. Furthermore, plaintiff was busily engaged in looking after the hogs. If his testimony is to be believed, he was not day dreaming. As stated in 43 C. J. 1089:

"A traveler upon a street is not bound at his peril to discover every defect or obstruction, although it may be an open one, especially when his attention is diverted by other sufficient cause; * * *."

Whether the combative dispositions of these hogs was sufficient cause to divert the attention of an ordinarily prudent person was a question upon which reasonable men might differ. Viewing the record in its entirety and in the light most favorable to the plaintiff, we think the question of contributory negligence is one which should have been submitted to the jury.

It follows that the judgment of the lower court is reversed and the cause remanded for a new trial.

BEAN, C. J., BROWN and KELLY, JJ., concur.

CAMPBELL, J., took no part in this decision.