**CONTINO et al. v. BALTIMORE & ANNAPOLIS R. CO. (REINDOLLAR et al., third-party defendant).**

Civ. No. 3927.

United States District Court
D. Maryland.

June 18, 1949.

J. Richard Wilkins, of Baltimore, Md., for plaintiff.

Marshall, All, Carey & Doub (of George Cochran Doub and Frank L. Fuller III), of Baltimore, Md., for Baltimore & Annapolis R. Co.

COLEMAN, Chief Judge.

This is a suit brought to recover damages for injury to a motor truck with trailer owned and operated by plaintiffs, caused by its colliding with a bridge in Anne Arundel County, Maryland, over which run the

tracks of the Baltimore & Annapolis Railroad Company, defendant, and under which runs one of the Maryland State highways.

On motion of the defendant railroad, the Maryland State Roads Commission was impleaded as a third-party defendant, but was dismissed before trial by the Railroad on the Commission's motion that, being an agency of the State of Maryland and not having consented to be sued, it is not subject to suit. See Fisher & Carozza Bros. Co. v. Mackall, 138 Md. 586, 114 A. 580; Jones v. Scofield Bros., D.C., 73 F.Supp. 395. See also Lohr v. Upper Potomac River Commission, 180 Md. 584, 26 A.2d 547.

The material facts relative to the collision are found to be these: About 3 o'clock on the morning of September 17, 1946, while still dark, the plaintiffs' tractor and trailer were proceeding easterly on Route No. 176, a public highway of the State of Maryland, in Anne Arundel County. The operator of the tractor, never having driven on this road before, was unfamiliar with the location of the bridge over the highway. When he had reached a point approximately 300 feet to the west of the bridge, he observed a warning sign along the highway to the effect that 500 feet ahead was an intersecting road. Thereupon, he slackened his speed. The trailer was heavily loaded with produce. There was a slight down grade at this point. The tractor's head lights were on and complied with the Maryland motor vehicle laws as to strength and deflection. The trailer required a clearance of 12 feet, whereas there was only a clearance of 10 feet 10 inches between the road and the Railroad bridge, with the result that the upper portion of the trailer crashed into the bridge and was demolished. A major portion of the produce in the trailer was also destroyed. Along the highway which the truck and trailer had been traversing there was no sign of any kind giving a warning of the low bridge clearance. More than a year after the accident, and several weeks before the present suit was filed, the State Roads Commission put up a conspicuous warning sign on the side of the highway, seven hundred or more yards from the bridge, to replace apparently two similar warning signs, one erected at a greater, and

the other at a lesser distance from the bridge several years before, but which were not proved to have been still in place at the time of the accident. The only warning appeared in the words "Clearance 10 feet 6 inches", painted, but not illuminated, with letters six inches high, by the State Roads Commission on the steel structure of the bridge itself, so that the letters themselves were 12 or 13 feet above the surface of the highway. The operator of the tractor testified that, as he approached the bridge, he did not see this clearance warning because it was not illuminated and the lights of the tractor, properly focussed on the highway, were not deflected sufficiently upward to shine on this warning sign.

This bridge was built in 1929 by the Maryland State Roads Commission, in order to obviate a grade crossing on a new highway, No. 176, which was constructed as a link between two major highways, U. S. Highway No. 1 and U. S. Highway No. 301. Previously, no highway intersected the Railroad at this point. The Railroad had been maintained there at the same grade for approximately 45 years. The State Roads Commission initiated the project, designed the underpass, determined the clearance, prepared the plans and specifications and constructed the bridge in conformity therewith. The Railroad contributed $3,500 to the cost of the bridge and underpass, and the Railroad's engineer of maintenance of way approved the plans and specifications to the extent that he found the bridge structure to be adequate for the maintenance of the tracks of the Railroad and its train operations. The sharing by the Railroad in the cost of the construction was evidenced by writing, but without reference to any legal obligation so to do. At the time of this construction, the normal clearance for Maryland highways passing under structures of this kind was 14 feet, but because of difficulties which developed in constructing the highway at this point due to a stream under the roadbed, the clearance, as designed, was reduced to 10 feet, 6 inches, and at the time of the collision it was actually 10 feet, 10 inches. The original level of the Railroad tracks was not altered to carry them over the

bridge. The Railroad Company never performed any maintenance work with respect to the bridge except to keep the ties and rails in proper condition, and it never received any request from the State Roads Commission to erect any signs on or near the bridge for the purpose of warning travelers on the highway of their approach thereto.

It is to be noted that this is not a case of changing or eliminating a grade crossing where a railroad and a highway intersected, because the Railroad was there for some 45 years before any highway existed at this point. It is a case of a highway being laid out where there had never been one before, and made to pass under a pre-existing railroad's right of way by "sinking" the new highway and carrying the railroad tracks at their original level over the highway by means of a bridge. Thus the Act of 1904, Ch. 620, Sec. 204A, Article 23, Sec. 252, 1939 Annotated Code of Maryland, upon which plaintiffs largely rely, and which was in effect in 1929, and is still, is not applicable to the present situation. That statute provides that a railroad company shall have the right, whenever it considers that the crossing of its tracks by a public highway is dangerous, to provide at its own expense that the public highway shall be carried across its tracks by an overhead bridge or tunnel; and in order to construct the new crossing the railroad company is authorized to exercise the power of condemnation. The statute provides that if a tunnel is employed, its height from the surface of the roadway shall be not less than 14 feet. Thus it will be seen that this statute is not, by its language, applicable to the present case because first, the statute covers a situation where a railroad company, considering an existing grade crossing to be dangerous, has the right to substitute an underpass or overpass; and second, such substitution is entirely at the railroad company's own cost and expense.

Similarly, the Act of 1906, Ch. 312, Sec. 4, Article 91, Sec. 26, 1924 Annotated Code of Maryland, which was in effect in 1929, is, by its terms, inapplicable. It provided that whenever a railroad "hereafter constructed" shall cross a highway the railroad shall be required to keep its roadbed and the bed of the highway in proper repair or else construct an overhead or undergrade crossing, subject to the approval of the State Roads Commission. This statute is inapplicable because the Railroad in the present case never constructed its roadbed across a highway. This Act is still in effect, but the words "hereafter constructed" which originally qualified the railroads made subject to it, were eliminated in 1931. See Article 89B, Sec. 26, 1939 Annotated Code of Maryland.

Likewise, the Act of 1931, Ch. 539, Sec. 13, Article 89B, Sec. 27, 1939 Annotated Code of Maryland, which was in effect in 1929 and is still, is inapplicable, because it provides that whenever a State highway and a railroad cross each other at the same level and the State Roads Commission deems such crossing dangerous to the public safety, the State Roads Commission may substitute an under or over pass. Here again, this law, certainly by its language, is inapplicable to the present case because relating to removal of an existing grade crossing, and none existed at the time the bridge and the highway under it were constructed.

No other provisions of the Maryland laws relating to grade crossings that were enacted prior to or since the construction of the underpass here in issue have any bearing upon the present situation. Sections of the Act of 1927, Ch. 327, and also sections of the Act of 1931, Ch. 539 not heretofore referred to relating to grade crossings, Article 89B, Secs. 28–39, inclusive, 1939 Annotated Code of Maryland, relate to either (1) damages recoverable by property owners affected by grade crossing elimination; (2) the procedure to be followed by the State Roads Commission with respect to grade crossing elimination; (3) obligation of railroad companies to comply with the requirements imposed by the State Roads Commission; or (4) division of expense between the State Roads Commission and the railroad of the cost of eliminating, relocating or altering existing grade crossings, and of the cost of maintaining and repairing bridges, archways or culverts and their approaches required for the elimina-

tion of existing grade crossings. By the Act of 1933, Ch. 223, Secs. 15 and 22, the division of such cost was one-quarter to be paid by the railroad and three-quarters by the State Roads Commission. The division had previously been an equal one. Article 89B, Secs. 29 and 37, 1939 Annotated Code of Maryland.

There thus appears to be no Maryland statute embracing expressly the precise situation here involved. However, it is clear from the Maryland decisions that where a highway is constructed, at grade, across, or over or under an existing railroad, whatever construction is necessary must be done and maintained by and at the expense of the party under whose authority the crossing is made. See Northern Central Ry. Co. v. Mayor, etc., of Baltimore, 46 Md. 425, involving construction of a viaduct by the City of Baltimore across the land and tracks of a railroad company; Central Pass Ry. Co. v. Philadelphia W. & B. R. Co., 95 Md. 428, 52 A. 752, involving construction of a crossing by a street railway over tracks of a steam railroad; Eyler v. Allegany County Commissioners, 49 Md. 257, 33 Am.Rep. 249, involving construction of a canal under an existing County highway by a canal company, and Washington B. & A. Electric R. Co. v. Cross, 142 Md. 500, 121 A. 374 involving construction by a railroad of a highway bridge over the railroad's tracks pursuant to order of County Commissioners. Apart from any common law responsibility, the State Roads Commission is under a statutory duty to properly maintain all State roads and bridges constructed or improved by it.. Act of 1947, Ch. 560, Sec. 44; Act of 1935, Ch. 537; 1939 Annotated Code of Maryland, Article 89B, Sec. 48; 1947 Cumulative Supplement, Annotated Code of Maryland, Article 89B, Sec. 44; See Huffman v. State Roads Commission 152 Md. 566, 137 A. 358; Murphy v. State Roads Commission, 159 Md. 7, 149 A. 566. The contract in the present case between the Railroad and the State Roads Commission did not alter this obligation on the latter's part since it initiated, designed and prescribed the plans and specifications for the underpass and overhead bridge. There was no legal obligation on the Railroad to defray any part of the cost of construction. True, it did pay $3,500 towards this cost, but such was a voluntary contribution, resulting from negotiations and a compromise agreement with the State Roads Commission after a grade crossing had been suggested. By the Act of 1927, Ch. 327, Sec. 38B, a railroad and the State Roads Commission were required to share equally in the cost of construction of this kind where its purpose was to eliminate an existing grade crossing; and by the Act of 1933, Ch. 223, Secs. 15 and 22, the State Roads Commission was required to pay three-fourths, and the railroad one fourth. Article 89B, Secs. 29 and 37, 1939 Annotated Code of Maryland. But these provisions as we have seen relate only to construction resulting from the elimination or change in a pre-existing grade crossing.

Plaintiffs rely, among other cases, upon Walters v. Baltimore & O. Railroad, 120 Md. 644, 88 A. 47, 46 L.R.A.,N.S., 1128. In this case the material facts are that pursuant to an Act of the Maryland Legislature, the City of Baltimore, in order to avoid grade crossing of several streets over the tracks of the B. & O. Railroad, made an agreement with the Railroad by which the City was to change the grade of one-half the width of certain streets, making the new grade rise by an incline until it reached the height of some 30 odd feet above the grade of the other half of the street and of the Railroad tracks. The City changed the grade and ordered the work, although the Railroad performed it and bore the expense of the construction, the result of which was to effectually bar all ingress and egress with respect of certain abutting property, and to cut off all light and air from the houses thereon. The abutting property owners brought suit for damages against both the City and the Railroad. The Court of Appeals held that such a change of grade and construction amounted to a taking of the property of the plaintiffs which could not be done without just compensation, and that the City and the Railroad were both liable as tort-feasors. The Court said, 120 Md. 644, at pages 653–658, 88 A. at page 50: "The real question is whether the structure erected, and which

is the occasion of this suit, is such an invasion of the rights of the plaintiff as to amount to a taking of their property within the meaning of the Constitution, or whether the injury amounts merely to a consequential damage, for which there may or may not be a right of action. If it was the former, then the act was one which even the municipal corporation had no right to do without making due compensation, and amounted to a tort for the commission of which the city was liable to the plaintiffs for the damage inflicted on them, whether the actual work was done by the city or by its authority. That is to say, if the invasion of the rights of the plaintiffs amounted to a taking; as regards these plaintiffs, both the city and the railroad company were tort-feasors, and both liable for the injury done. If the city was liable, it could not evade its liability by delegating to another the doing of the tortious act. The ordinance by which the city gave the railroad company the right to build, apparently recognized this when in section 18 it assumed an obligation, on the part of the mayor and city council, to urge the passage of an act by the Legislature authorizing the mayor and city council to compensate abutting property owners for the damage sustained by them, and conditionally guaranteeing them such compensation.

\* \* \* \* \* \*

"In view of the authorities, to which reference has been made in part, and the injury to the property of the plaintiffs being such as already indicated, it follows that, the construction of the abutment or approach complained of in this case amounting to a taking of property of the plaintiffs which neither the mayor and city council could do or authorize to be done without making just compensation therefor to the owner, that so far as the present plaintiffs were concerned, both defendants were joint tort-feasors, and therefore both liable to the plaintiffs, and the rulings of the court below on the prayers withdrawing the case from the jury erroneous.

\* \* \* \* \* \*

"The plaintiffs were no parties to the ordinance, if it is to be regarded in the light of a contract, and cannot therefore be limited in their right of recovery to only one of the two joint tort-feasors. What may be the respective liabilities of the city and the railroad company inter sese, resulting from any undertakings or agreements between them, is a matter in which these plaintiffs have no concern, and which it is not necessary now to decide."

It is clear that the facts in the Walters case are not parallel with those before us. In fact the situation is the reverse of what we have here. There, the City changed the grade but the actual construction was done by the Railroad which bore the entire expense. Here, the State Roads Commission was not only responsible for the construction, but actually performed all of the work. In the Walters case, the Railroad was in effect an agent of the City. In the present case, there is no agency or joint tort feasor relationship, unless it be said that the mere approval of the plans by the Railroad and sharing in the cost of the construction of the bridge amounted to such.

Plaintiff also relies upon Mayor and City Council of Baltimore v. Thompson, 171 Md. 460, 189 A. 822, but there the facts also were entirely different from those before us. That case involved a street in Baltimore which was carried over the tracks of the Pennsylvania Railroad by a steel and concrete bridge supported in part by three iron girders encased in concrete. One of the three girders was located on either side of the bridge at the edge of that part of the street used for vehicular traffic and the other girder was located in the center of the street, thus dividing the driveway over the bridge into two parts, one for east and the other for westbound traffic. Plaintiff, while driving his automobile over this bridge, collided with the center girder. He originally brought his action against both the City and the Railroad to recover compensation for the injury suffered as a result of this collision, on the theory that both defendants were negligent in failing to take reasonable precaution to warn the traveling public of the presence of the center girder which had no light upon it, under the conditions existing at the time of the accident, namely, foggy weather, with poor visibility. At the trial below a verdict was directed in

favor of the Railroad; the case proceeded against the City and the jury returned a verdict for the plaintiff. This judgment was affirmed by the Court of Appeals, the Court holding that the obstruction in the highway was of such character·as to seriously imperil the safety of travelers thereon and that, therefore, the City was under an obligation to warn, which it had not done, the traveling public, of the location of the obstruction, or otherwise guard them against injury, by adequate means while using the highway under reasonably foreseeable conditions of weather or traffic.

The plaintiff in the present case appears to place reliance upon the Thompson case by reason of the following language appearing at the close of the appellate court's opinion, 171 Md. 460, at page 476, 189 A. 822, at page 829: "Appellant also objects to the action of the trial court in directing a verdict for the Pennsylvania Railroad Company. The reason for that ruling does not appear, but since the appellee submitted voluntarily to a judgment of non pros as to that defendant before any verdict as to it was returned, it is not apparent how the propriety of that ruling can be considered on this appeal. So far as we know, the rule that a plaintiff may sue any one or all of several joint tort-feasors at his election is still the law of this state. And after the judgment of non pros except for the payment of costs, the appellee has the same right to sue the railroad company now as she had before this action." Obviously, this language is not to be taken as a ruling to the effect that had the liability of the Railroad been at issue in the case on appeal, the appellate court would have held the Railroad liable. Furthermore, there is nothing to indicate from the report in the Thompson case that the factual situation was in any respect closely akin to that now before us. Apparently, in the Thompson case, the obstruction that was found unlawful was one which the Railroad itself constructed and over which it had complete control.

We have not found, nor have we been referred to any Maryland case which bears as close relation factually to the present case as do the one which we have just analyzed. This is true with respect to such cases as East Coast Freight Lines v. Mayor & City Council of Baltimore, Md., 58 A.2d 290, 2 A.L.R.2d 386; Eyler v. Allegany County Commissioners, 49 Md. 269, 33 Am. Rep. 249; Whitby v. Baltimore, C. & A. Ry. Co., 96 Md. 700, 54 A. 674.

Turning to a consideration of decisions from other States, we do find that they embrace facts more akin to those before us. For example, in Hill Construction Co. v. Central R. Co. of N. J., 167 A. 757, 11 N.J.Misc. 622, the defendant railroad maintained a bridge over a New Jersey State highway. The clearance between the center of this bridge and the highway was only 11 feet 5½ inches and only slightly more at the sides of the highway. A truck belonging to plaintiff had a height, with its load, of 11 feet 8 inches, with the result that in going under the bridge, the load on the truck collided with one of the girders. The bridge had been erected some twenty years before the accident on plans and specifications as to minimum clearance of 12 feet, the difference in clearance at the time of the accident being accounted for by the fact that the highway had been resurfaced and slightly built up. Plaintiff based its claim of negligence on the part of the defendant on two grounds: (1) that the bridge did not provide a legal and proper clearance; and (2) that there was no warning of this fact given to users of the highway. There was in effect at the time of the collision a provision in the Motor Vehicle Act of New Jersey, R.S. 39:1-1 et seq., N.J.S.A., that the height of commercial motor vehicles should not exceed 12½ feet, and also that all highway obstructions should be marked clearly with black and white lines and checkerboard squares. The bridge in question was built by the Railroad under statutory authority, with approval of the highway engineers and therefore became what is termed a "legalized" obstruction. However, the bridge had no markings whatever on it and no legend showing the clearance. The operation of the truck was entirely lawful. In affirming the judgment of the lower court for the plaintiff, the Court said, 167 A. 757, at page 758: "The defendant could not·

be charged with negligence in the building of the bridge, since it was constructed under statutory authority and its plans approved by the local authorities, and therefore its obstruction of the highway was what our cases have termed a legalized obstruction.

"On the other hand, the public highway is presumed to be free from obstruction. Durant v. Palmer, 29 N.J.L. 544. But such legalized obstruction is of course subject to the provisions of any and all statutes which provide for the safety of the traveling public, and it is obvious that the provisions of the Traffic Act, [R.S. 39:4–1 et seq., N.J. S.A.] apply to all obstructions including railroad bridges.

"The argument that supervision of railroads is confined to the public utility commission is without merit, for while the Legislature may of course delegate to a commission, or any other instrumentality of government, the right to regulate a particular operation, such as utilities, it cannot be said to have divested itself of the right to enact laws which would supersede the powers given any such commission, agency, or instrumentality not in contravention thereof but entirely in addition thereto.

"The provisions of the Traffic Act, above mentioned, impose a duty upon the defendant to so mark the obstruction (in this case a railroad bridge) that it will arrest the attention of the traveling public, and, so to speak, put people using the highway on their guard. This the defendant admittedly did not do. While the violation of that direction of the statute is not negligence per se, yet it is an incident of negligence from which negligence may be legitimately inferred. Kuczko v. Prudential Oil Corp., 110 N.J.L. 111, 164 A. 308; Kolankiewiz v. Burke, 91 N.J.L. 567, 103 A. 249; Evers v. Davis, 86 N.J.L. 196, 90 A. 677. Whether this negligence was the proximate cause of the damage sustained is a fact question, and the court, sitting without a jury, was entirely within its province in determining that the defendant was guilty of negligence and that such negligence was the proximate cause of the happening and consequent damage."

It is to be noted that in the case just referred to the Court based the right of re-covery against the Railroad upon a statutory duty which it found that the Railroad had to so mark the low clearance of the bridge as to warn the traveling public, which the defendant failed to do. It does not appear that any contention was made, as here, that the Railroad could escape this obligation by reason of the full control of State highways vested in the State. The crux of the New Jersey decision lies in the fact that the Court interpreted the New Jersey Traffic Act as imposing a direct obligation upon the Railroad to mark its bridges with appropriate warnings. There is no correspondingly parallel provision in the Maryland statutes relating to obstructions on highways. It is this distinction which counsel for the Railroad Company in the present case stresses, relying upon such cases as Murphy v. State Roads Commission, supra, where the plenary power of the Commission is unquestionably upheld.

In Krause v. Southern Pacific Co., 135 Or. 310, 295 P. 966, a decision of the Supreme Court of Oregon, suit was brought against both a municipality and a railroad for injury occasioned by occupant of a truck on one of the municipality's streets coming in contact with an overhead railroad trestle. In imposing liability upon both the railroad and municipal corporation, the Court said, 295 P. 966, at page 968: "In our opinion there was evidence tending to support the charge that defendants were joint tort-feasors. It was the duty of the railroad company to so construct its trestle as to afford clearance for ordinary vehicular traffic. Brown v. Southern Ry. Co., 111 S.C. 140, 96 S.E. 701; Board of Councilmen of City of Frankfort v. Bowen's Adm'x, 205 Ky. 309, 265 S.W. 785, 786; Cooke v. Boston & Lowell Railroad Corporation, 133 Mass. 185; Boyd v. Kansas City, 291 Mo. 622, 237 S.W. 1001; White on Personal Injuries on Railroads, § 909; 22 R.C.L. 991. The company was not bound to anticipate that injury would result to those using vehicles of an unusual or extraordinary type; but the truck in question does not, in the light of the evidence, fall within such class. The statute (Code 1930, § 62-703) authorizing the company to cross over or above the streets of a city

certainly did not contemplate an obstruction dangerous to those making ordinary use of the public highways.

"As to the liability of the city, the rule is thus stated in Board of Councilmen of the City of Frankfort v. Bowen's Adm'x, supra:

" 'Where a city has opened a street for public travel, it is its duty to construct and maintain it in a reasonably safe condition for ordinary travel, and it will be liable for injuries caused by obstructions that interfere with such use if made by itself, or if made by another when it has notice thereof, or by the exercise of ordinary care should have such notice.'

"Also see McQuillan on Municipal Corporations, sec. 2750, and Elliott on Roads & Streets (2d Ed.) sec. 785. The gravamen of the charge against the city is that, after having had notice of its dangerous character it permitted the maintenance of this impaired clearance. If it be said that the city had no authority to compel the railroad company to raise its trestle, we can see nothing to prevent it from lowering the grade of the street in order to give greater clearance. It was the clear duty of the city to maintain its streets in a reasonably safe condition for public travel. Knight v. City of La Grande, 127 Or. 76, 271 P. 41, 61 A.L.R. 256."

It is to be noted that here again, this Oregon decision turned upon the construction placed upon the particular Oregon statute authorizing the Railroad Company to cross over city streets, the court saying that this statute "certainly did not contemplate an obstruction dangerous to those making ordinary use of the public highway."

One other case warrants consideration, namely, Yackee v. Village of Napoleon, 135 Ohio St. 344, 21 N.E.2d 111, a decision of the Supreme Court of Ohio. There, both the Village and the Railroad were sued. The case involved an overhead railroad bridge built and maintained by the Railroad Company within the Village, with the latter's acquiescence and consent. This structure had originally met the reasonable requirements of travel over the streets spanned by the bridge, but later became insufficient as to clearance above the street, by reason of changed conditions in lawful modes of travel. The Court held that both the municipality and the Railroad were liable for injury due to the improper clearance, and said, 21 N.E.2d 111, at pages 115, 118: "Of course, the municipality is not an insurer of the safety of persons using its streets, but it must see that such streets are kept in reasonably safe condition for travel in the usual mode. City of Dayton v. Glaser, 76 Ohio St. 471, 81 N.E. 991, 12 L.R.A.,N.S., 916; Village of Mt. Pleasant v. McCullough, 79 Ohio St. 439, 87 N.E. 1142. This is a responsibility from which the municipality cannot relieve itself by any attempt to place the performance of such duty upon another. For instance, the fact that a railroad company, by agreement with the city, erects structures within a street to carry its railroad over the street does not exempt the city from responsibility created thereby. City of Steubenville v. McGill, 41 Ohio St. 235; Wabash R. Co. v. City of Defiance, 52 Ohio St. 262, 307 and 310, 40 N.E. 89, affirmed, 167 U.S. 88, 17 S.Ct. 748, 42 L.Ed. 87; Louisville & Nashville R. Co. v. Stanley, 232 Ala. 273, 167 So. 745.

\* \* \* \* \* \*

"Even if the bridge of the defendant railroad was lawfully constructed over the street, the jury was entitled to consider whether it was negligently maintained at the time of the fatal accident to plaintiff's decedent. Where an overhead railroad bridge, built and maintained by a railroad company within a municipality with the latter's acquiescence and consent, originally met the reasonable requirements of travel over the street spanned by the bridge, but has since become insufficient in clearance above the street by reason of changed conditions in lawful modes of street travel, it is the duty of the railroad company to make such alterations in its bridge as become essential to so meet changed conditions as to permit such travel with reasonable safety. A failure to perform such duty, resulting in injury to a person coming in contact with such bridge while travelling upon the street underneath it, presents a jury question as to whether the railroad company was in the exercise of ordinary care in the premises.

Cooke v. Boston & Lowell R. Corp., supra; Boston & Maine R. v. County Com'rs of Middlesex County, 239 Mass. 127, 131 N.E. 283; City of Olean v. Pennsylvania R. Co., 249 N.Y. 364, 164 N.E. 251; State of Indiana ex rel. City of Muncie v. Lake Erie & Western R. Co., C.C., 83 F. 284."

Here again, the decision appears to have turned primarily upon the construction to be placed upon the law of Ohio with respect to the limitations upon a railroad's right to occupy or interfere with the use of city streets. So, although the issue there presented is somewhat akin to the one in the present case, it, nevertheless, is not identical, particularly for the reason that in the Ohio case, the offending bridge was not merely maintained but actually constructed by the Railroad Company,—the reverse of the situation in the present case where the State, that is, the State Roads Commission, assumed entire charge of the construction and by statute had exclusive power to determine the character of, and to maintain all road signs and warnings along the State's public highways.

The foregoing careful analysis of the pertinent Acts of the Maryland Legislature in effect prior to, at the time of, and since the construction of the bridge and underpass here in suit, together with an equally careful review of all of the pertinent decisions of the Maryland Court of Appeals as well as decisions in other jurisdictions, leads us to conclude that the defendant railroad cannot be held liable for the damage suffered by the plaintiffs.

The defendant railroad is sought to be held liable on the theory of its being a joint tort-feasor with the State Roads Commission. However, as we have hereinbefore shown, there existed neither statutory nor common law duty on the part of the railroad to make the public highway as it passed under the bridge, safe for users of it. An owner of land over which a public highway runs is under no duty to maintain the highway in a safe condition. The railroad in the present case is in a similar position. The building of the bridge and the underpass was the act of the State Roads Commission alone. In making this construction the State Roads Commission acted

within authority exclusively given to it at the time of its creation by the Act of 1908, Ch. 141, Article 91, Sec. 28, 1924 Annotated Code of Maryland, and by subsequent enactments. As was said in Murphy v. State Roads Commission, supra, 159 Md. at page 14, 149 A. at page 569: "From the beginning and throughout the entire evolution of the present system of state highways construction, maintenance, and control, the constant and unbroken policy of the state has been to establish and maintain an adequate system of state highways adapted to modern methods of transportation, so as to afford to every section of the state safe, adequate, economical, and convenient facilities of communication with every other section thereof." Thus, as part of the broad authority of the Commission, it was given exclusive power to erect and maintain along the rights of way of the roads of the State, all necessary signs, signals or markers for the purpose of directing the traveling public, warning them of danger, or for any other purpose as in the opinion of the Commission might be required. See Act of 1931, Ch. 539, Sec. 30. So, just as the railroad in the present case had neither legal obligation nor right to direct or control how the bridge should be constructed by the Commission, except to insure that the structure would be adequate for its train operations, it had no right to control the erection of any warning signs. Therefore, any negligence on the part of the State Roads Commission in this respect cannot be imputed to the railroad.

As we have seen, at the time this particular underpass was built, there was not, nor is there at the present time, any requirement in Maryland fixed by either statute or court decision, as to minimum clearance under bridges over highways when constructed as in the present case, although a minimum clearance of 14 feet is provided in cases where a railroad may see fit to eliminate an existing grade crossing at its own expense. However, the State Roads Commission is under a definite statutory obligation to see that the clearance for all State road underpasses is reasonably adequate for the passage of all types of vehicles generally accustomed to use the highways. This

644

means that it may be necessary to increase the clearance of underpasses from time to time as the height of motor vehicles increases, and that there is a statutory obligation upon the State Roads Commission to give adequate warning to the traveling public of any underpass clearance that may not be sufficient to accommodate vehicles likely to use the highways, even though their height may be in excess of the average height of vehicles of the same general type. It was negligent failure in this respect that we find existed on the part of the State Roads Commission in the present case. That is to say, while in the absence of a fixed minimum clearance for a bridge such as that here in issue, the State Roads Commission was not required to adhere to a particular clearance in every case, nevertheless, it was required to give adequate warning if it knew, or had reasonable ground to know, as we believe was true in the present instance, that the clearance was not adequate for every vehicle licensed to use, and that might use this particular highway.

The result of our conclusion is undoubtedly harsh in the sense that it bars plaintiffs from all right of recovery, since the State Roads Commission, although having failed to meet its statutory obligation and being the sole party at fault, is immune from damage liability, as heretofore indicated, because an agency or branch of the State Government. But this harsh result is one which this Court is not competent to prevent. Admittedly, it does seem anomalous and unreasonable to say that plaintiffs have no right of recovery in the present suit, although had the accident occurred under similar circumstances within, for example, the City of Baltimore as a result of negligence in the construction or maintenance of a similar bridge by that municipality; or had it occurred with respect to a similar structure negligently constructed or maintained by the Federal Government, recovery could be had in either such instance. However, unless and until, in situations of this kind, the law of Maryland is changed to allow recovery against the State Roads Commission, the only remedy open to the present plaintiffs is to seek compensation for the damage suffered without, as we find, any fault on their part, through an Act of the Maryland Legislature.

An order will be signed in conformity with this opinion, dismissing the complaint for the reasons herein stated.